**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Dorothy BLANKINSHIP et al.,
Defendants-Appellees.**

**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Dorothy BLANKINSHIP et al.,
Defendants-Appellees.**

**Nos. 75–1704, 75–3722.**

United States Court of Appeals,
Ninth Circuit.

Oct. 15, 1976.

Rehearing and Rehearing En Banc
Denied Jan. 14, 1977.

Carl Strass, Atty. (argued), Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Edwin J. Welsh (argued), of Welsh & Winfree, Portland, Or., for defendants-appellees.

**1274**

Before MOORE,* KILKENNY and SNEED, Circuit Judges.

SNEED, Circuit Judge:

The primary issue presented by these cases is whether the 6 percent interest rate specified by the Declaration of Taking Act, 40 U.S.C. § 258a (1970), is applicable to each taking pursuant thereto without regard to then prevailing interest rates. The United States, the appellant, contends that it is, while the appellees assert otherwise. More particularly, the appellees assert that the rates of 8.5 and 8 percent employed by the trial court in computing the "interest rate required in the period from May 30, 1973 [the date of taking] to date [the date of judgment] to give just compensation" was proper, while the appellant contends that the trial court should have employed the statutory rate of 6 percent in both cases. These contentions raise the secondary issues of these cases, *viz.*, under what circumstances is a rate greater than 6 percent proper and in what manner are such circumstances established.

As to the primary issue we hold the Fifth Amendment under certain circumstances does require the use of a rate of interest in excess of 6 percent. With respect to the secondary issues, we hold that the determination of whether a proper and reasonable rate in excess of 6 percent is required and the amount of such rate is a factual question and should be determined by the trier of fact. In this we follow our observations in *United States v. 100 Acres of Land, More or Less, in Marin County, Calif.*, 468 F.2d 1261, 1269 (9th Cir. 1972), *cert. denied*, 414 U.S. 822, 94 S.Ct. 119, 38 L.Ed.2d 54 (1973).

However, we also hold that the trial court in this case, acting as the trier of fact, did not consider evidence we believe to be of great importance in establishing the proper and reasonable rate. Specifically, the trial court did not have before it certain highly relevant evidence with the result that the rates selected may have been improperly skewed. The evidence before it was inadequate to establish the rate of interest that would have been available to the person from whom the property has been taken had he, at the date of taking, invested the total amount of any deficiency in the original deposit in a marketable public debt security issued by the United States Treasury having a duration commencing with the date of taking and ending with the deposit in the registry of the court of the entire deficiency with proper interest. Evidence tending to establish such a rate is necessary to fix fairly the just compensation to which the person deprived of his land is entitled. Without evidence of such a rate the rates selected very likely may have been unduly influenced by rates applicable to loans more speculative than one to the United States. Therefore, we reverse and remand for further proceedings not inconsistent with this opinion.

## I. *Facts.*

On May 30, 1973, the United States filed two declarations of taking and complaints in condemnation to vest title in the United States to several parcels of land held by these appellees. The United States, pursuant to statute, deposited $228,285 for parcel 1 and $697,433.75 for parcel 3, sums it estimated to be just compensation, in the registry of the district court. *See* 40 U.S.C. § 258a (1970). After jury trials, true just compensation for parcel 1 was found to be $678,881.75, leaving an unpaid deficiency of $450,596.75. True just compensation for parcel 3 was found to be $2,107,500, leaving an unpaid deficiency of $1,410,066.25.

The district judge then undertook to fix the value to be placed on the delay in payment of the deficiency amounts. He considered testimony and affidavits of bankers and the clerk of the district court which set forth the "prime rate" as well as the rates applicable to three and six month certificates of deposit issued by certain Oregon banks, and 90 and 180-day Treasury

---

* Honorable Leonard P. Moore, Senior United States Circuit Judge, for the Court of Appeals, Second Circuit, sitting by designation.

bills. The trial court awarded interest at the rate of 8.5 percent of the parcel 1 deficiency and 8.0 percent of the parcel 3 deficiency.[1]

II. *Interest As a Part of "Just Compensation."*

Payment of just compensation to one from whom property is taken by eminent domain is required by the Fifth Amendment. *United States v. Miller*, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943); *Jacobs v. United States*, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933); *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664 (1923); *United States v. Rogers*, 255 U.S. 163, 41 S.Ct. 281, 65 L.Ed. 566 (1921); cf. *United States v. Thayer-West Point Hotel, Inc.*, 329 U.S. 585, 67 S.Ct. 398, 91 L.Ed. 521 (1947). Just compensation in eminent domain cases consists of "the full equivalent of the value of the [property] . . . paid contemporaneously with the taking." *Phelps v. United States*, 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083 (1927). This "full and perfect equivalent" means that "the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken." *Seaboard Air Line Ry. Co. v. United States, supra; United States v. Miller, supra.* This standard requires that a court ascertain the extra amounts necessary in order "that the owner shall not suffer loss and shall have the 'just compensation' to which he is entitled." *Seaboard Air Line Ry. Co. v. United States, supra.* Accordingly, an "extra amount" must be paid when the taking precedes the payment of compensation; "[i]nterest at a proper rate is a good measure." *Id.* This is true because he who pays $1.00 tomorrow to discharge a debt of $1.00 due and payable today, pays less than he owes. A zero rate of interest, for economic purposes, does not exist.

These principles are applicable to takings pursuant to the Declaration of Taking Act. The purpose of the Act is to provide a means by which the United States can acquire quickly a fee simple absolute title to land taken "for the use of the United States." 40 U.S.C. § 258a (1970).[2] As a consequence, we treat the Act as one authorizing a particular means by which the power of eminent domain can be exercised.[3]

Takings under the Act do not involve the payment of interest on the amount deposited in the court as an estimate by the acquiring party to be just compensation. The payment of such interest is specifically disallowed. This in no way contravenes the Fifth Amendment. The amount deposited is "on account of the just compensation" and is available to the "parties in interest." *Id.* With respect to this amount there is no delay in payment for which interest would compensate.

This is not true with respect to any deficiency. "Just compensation" requires that the owners of the land be compensated for the delay in the deposit of this amount. The appellant argues that the principles of "just compensation" are not applicable because the failure of the proper official to deposit the entire amount of "just compensation" is akin to an appropriation of property by government officials without authority of the Congress. *See United States v. Goltra*, 312 U.S. 203, 207, 61 S.Ct. 487, 85 L.Ed. 776 passim (1941); *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 305,

---

1. The case involving parcel 3, No. 75–3722, went to trial later and judgment was entered at a later date. By this time, there had been a sharp drop in interest rates. This indicates the trial court sought to arrive at a rough average of rates prevailing during the period the deficiency was unpaid.

2. *See Bishop v. United States*, 288 F.2d 525, 528 (5th Cir. 1961).

3. The title of the Act, which is codified as the Declaration of Taking Act, 40 U.S.C. § 258a (1970), described it as

An Act to expedite the construction of public buildings and works outside of the District of Columbia by enabling possession and title of sites to be taken in advance of final judgment in proceedings for the acquisition thereof under the power of eminent domain.

46 Stat. 1421 (1931). *See Bishop v. United States*, 288 F.2d 525 (5th Cir. 1961).

43 S.Ct. 354, 67 L.Ed. 664 (1923). Claims arising from such unauthorized appropriations are at most tort claims against the United States, not rights protected by the Fifth Amendment. As such, the argument goes, the owner from whom land was taken is entitled only to that interest provided by the Act, *viz.*, 6 percent.

We reject this construction of the Act. To accept it would impose on good faith estimates of just compensation by proper officials, which are determined to be inadequate, a characterization undeserved factually. In addition, there is nothing in the language of the Act to suggest that Congress regarded an official who employed an estimate more prudent than subsequent events justified as acting beyond the scope of his authority. Finally, the appellant's view of the statute mingles tort and eminent domain notions in an awkward manner not likely to have been intended by Congress. For these reasons, we cannot accept the view that a claim of interest with respect to a deficiency stands on the same footing as does a claim for consequential damages, such as future loss of profits, certain moving expenses, etc. *Cf. United States v. Miller*, 317 U.S. 369, 376, 63 S.Ct. 276, 87 L.Ed. 336 (1943); *United States v. General Motors Corp.*, 323 U.S. 373, 379, 65 S.Ct. 357, 89 L.Ed. 311 (1945).

■ These observations lead us to conclude that the 6 percent figure employed by Congress in the Declaration of Taking Act cannot be viewed as a ceiling on the rate of interest allowable in computing just compensation with respect to a deficiency. It will, of course, operate as a floor. No lesser rate than 6 percent is consistent with the intent of Congress; a rate no greater than 6 percent in some instances will contravene the Fifth Amendment.

## III. *Determining the Proper Rate.*

We strongly suspect that in this case the use of 6 percent is barred by the Fifth Amendment. As already mentioned, the trial court had before it evidence pertaining to the commercial "prime rate," the rate applicable to certificates of deposit issued by certain Oregon banks, and Treasury bills. From this it arrived at the 8.5 percent rate applicable to parcel 1 and the 8.0 percent rate applicable to parcel 3.

■ We are reluctant to disturb this finding and do so only because we are convinced that the proper interest rate applicable to an obligation of the United States may well be lower than that applicable to other borrowers. Moreover, this lower rate is particularly relevant here because the obligation to pay the deficiency is an obligation of the United States, a creditor whose obligation embodies no risk of default. Seizure of land under the Declaration of Taking Act is an act by the United States by which it substitutes for ownership of land, together with the risks attendant thereto, an obligation of the United States which is free of the risk of default. The maturity date of that obligation is the date at which the deficiency and the proper interest is deposited in the court. Thus, the obligation may be more equivalent to a two or three-year Treasury note or bond than a 90 or 180-day Treasury bill.

Therefore, we do not consider the trial court's use of such bills as adequate to counter the distorting effect of the other data it considered. Such other data involved obligations not as riskless as those of the Treasury. We believe that the trial court should have focused more on that type of marketable public debt security which constitutes a direct obligation of the United States Treasury having a duration approximating the period during which the deficiency was unpaid. Data of this type appears in the *Treasury Bulletin*[4] and the *Federal Reserve Bulletin.*

We acknowledge that our remand may lead to but little change in the 8.5 and 8.0 rates previously selected. On the other hand, we are not certain of this and moreover believe it important to establish the relevancy of the type of data described

---

4. Of particular significance is the table setting forth "Yields of Treasury Securities" which appears regularly in the monthly Treasury Bulletin. *E. g.*, Treas.Bull., July, 1976 at 79.

above. We also acknowledge that the marketability of a claim against the United States for a deficiency under the Declaration of Taking Act is considerably less than that of a marketable public debt security of the United States. Some allowance for this feature by the trier of fact is not unreasonable.

Finally, nothing in our remarks is intended to condemn those authorities which under their circumstances approved the use of a local legal rate of interest, or other rates not explicitly keyed to rates applicable to marketable Treasury bills, notes, and bonds, as an alternative measure of just compensation for delay in payment. *E. g., United States v. A Certain Tract or Parcel of Land in Chatham County, Ga.*, 47 F.Supp. 30 (S.D.Ga.1942). Our purpose is to draw attention to the fact that such securities provide a source of data very useful in this type of case.

REVERSED and REMANDED.

KILKENNY, Circuit Judge (concurring and dissenting):

I am in agreement with substantially everything which is said by the majority, except that language which remands to the district court to focus its attention " . . more on that type of marketable public debt security which constitutes a direct obligation of the United States Treasury having a duration approximating the period during which the deficiency was unpaid."

I am convinced that the district court considered adequate relevant evidence in its determination of what rate of interest was constitutionally required by the just compensation provisions. I cannot say that its finding is clearly erroneous. FRCivP 52(a).

Moreover, I do not agree that the "Seizure of land under the Declaration of Taking Act is an act by the United States by which it substitutes for ownership of land, together with the risks attendant thereto, *an obligation of the United States which is free of the risk of default.*" [Emphasis supplied.] This analysis is fundamentally unsound: What the United States substitutes for the ownership of land is its obliga-

tion to pay the owner *just compensation* for the property taken. Undue emphasis, as here, upon the monetary returns from obligations of the United States Treasury is not warranted.

I would affirm the judgment of the lower court in all respects.