EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| La Autoridad de Careteras y Transportación de Puerto Rico<br><br>        Recurrida<br><br>              v.<br><br>Adquisición de 8,554.741 metros cuadrados en el Barrio Canas del Término Municipal de Ponce et als<br><br>        Peticionaria<br><br>La Autoridad de Carreteras y Transportación de Puero Rico<br><br>        Recurrida<br><br>Adquisición de 120,925.207 Metros cuadrados en el Barrio Canas del Término Municipal de Ponce, et als<br><br>        Peticionaria | Certiorari<br><br>2007 TSPR 178<br><br>172 DPR _____ |

Número del Caso: CC-2005-952


Fecha: 9 de octubre de 2007

Tribunal de Apelaciones:

          Región Judicial de San Juan
Juez Ponente:
          Hon. Cotto Vives

Abogados de la Parte Peticionaria:

          Lcdo. Eric A. Tulla

Abogado de la Parte Recurrida:

          Lcdo. Rubén E. Alayón del Valle

Oficina del Procurador General:

          Lcda. Leticia Casalduc Rabell
          Procuradora General Auxiliar

Materia:   Expropiación Forzosa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

La Autoridad de Carreteras y Transportación de Puerto Rico

   Recurrida

     v.

Adquisición de 8,554.741 metros cuadrados en el Barrio Canas del Término Municipal de Ponce et als

   Peticionaria

La Autoridad de Carreteras y Transportación de Puerto Rico

   Recurrida

Adquisición de 120,925.207 metros cuadrados en el Barrio Canas del Término Municipal de Ponce, et als

   Peticionaria

            CC-2005-952

OPINION DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR RIVERA PÉREZ

San Juan, Puerto Rico, a 9 de octubre de 2007.

Se nos solicita la revisión de una Sentencia emitida por el Tribunal de Apelaciones, Región Judicial de San Juan, mediante la cual confirmó y modificó una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, que declaró con lugar una solicitud de expropiación a favor de la Autoridad de Carreteras y Transportación. Veamos los hechos acaecidos que originan el presente recurso.

I

El 26 de abril de 1994, la Autoridad de Carreteras y Transportación de Puerto Rico, en adelante ACT, presentó ante el Tribunal de Primera Instancia dos peticiones de expropiación forzosa para la adquisición de 8,554.741 y 120,925.207 metros cuadrados en el Barrio Canas del término municipal de Ponce.[1] Como justa compensación, la ACT depositó las cantidades de $342,200 y $1,230,700 respectivamente. Se denominaron como partes con interés a Adriana Mercado de Wilson, Richard S., María Luisa, Margarita María de apellidos Wilson Mercado; David Mario, Eileen María de apellidos Coffey Mercado y Eileen Mercado O´hanlon, John Doe, Richard Doe, Eufemia Eileen Mercado, Adriana Luisa Mercado Parra, John Doe y Richard Doe, en adelante y en conjunto los peticionarios.

Luego de un largo y accidentado desarrollo procesal, las partes se reunieron el 21 de octubre de 2003 y llegaron a unos acuerdos transaccionales en cuanto al valor de las propiedades en controversia.[2] Estas propiedades se valoraron en $395,000 (KEF-1994-0133) y $4,252,679 (KEF- 1994-0131) respectivamente. Sin embargo, las partes no pudieron acordar la tasa de interés que debería pagar la ACT sobre la suma adicional pactada.[3] Por tal razón, los

---

[1] Apéndice del recurso de *Certiorari*, págs. 42-48, 357-364.

[2] *Íd.*, págs. 190-191, 487-488, 489-490.

[3] Esto debido a que las partes con interés entendieron que éste era un asunto de índole constitucional que no era

peticionarios expresaron que someterían un escrito para impugnar la constitucionalidad de la tasa de interés dispuesta por la Ley de Expropiación Forzosa de 12 de marzo de 1903[4], según enmendada, en adelante Ley de Expropiación, o de su aplicación respecto a la tasa de interés promulgada por la Oficina del Comisionado de Instituciones Financieras, en adelante OCIF.

El 21 de octubre de 2003, los peticionarios presentaron ante el Tribunal de Primera Instancia un escrito titulado "Memorando sobre la Tasa Aplicable al Pago de Justa Compensación en casos de Expropiación Forzosa".[5] En dicho escrito, los peticionarios plantearon que la tasa de interés prescrita en la Ley de Expropiación, *supra*, era inconstitucional de su faz, y en su aplicación ya que no proveía la justa compensación que requiere el Artículo II, Sección 9 de la Constitución de Puerto Rico.[6] Argumentaron, además, que la legislación estatal no tomaba en cuenta las fluctuaciones en el mercado local de los intereses entre el tiempo en que la propiedad fue expropiada y la fecha en que se dictaba la sentencia. Alegaron, además, que el método más idóneo para calcular la justa compensación era mediante la comparación de las tasas de intereses aplicables a

---

susceptible de ser transigido. Véase Apéndice del recurso de *Certiorari*, págs. 188-189.

[4] 32 L.P.R.A. sec. 2901, *et seq.*

[5] Apéndice del recurso de *Certiorari*, págs. 192-275, 491-574.

[6] 1 L.P.R.A. Const. P.R., Art. II, sec. 9.

varios instrumentos de inversión, tomando en cuenta las fluctuaciones de las tasas a través del tiempo entre la fecha de la expropiación y la fecha del pago principal.

El 27 de octubre de 2003, archivadas en autos el 30 de octubre de 2003, el Tribunal de Primera Instancia dictó sentencias parciales, mediante las cuales estableció el valor de las propiedades.[7] En cuanto a una de las propiedades (KEF 1994-0133), el foro de primera instancia decretó que el valor era $395,000. Por ello, le ordenó a la ACT depositar $52,800 debido a que ésta ya había consignado $342,200 al iniciar el procedimiento de expropiación. En cuanto a la otra propiedad (KEF 1994-0131), el mismo foro declaró que el valor de la propiedad era $4,252,679. Por tal razón, le ordenó a la ACT depositar $3,021,979 en vista de que al inicio del procedimiento de expropiación había consignado $1,230,700. Además de las sumas adicionales en los respectivos casos, la ACT debería satisfacer los intereses sobre las respectivas sumas a razón de la tasa vigente de uno por ciento (1%) anual-según establecida por la OCIF[8]- computados desde la presentación de la petición de expropiación hasta el pago total. Se ordenó al Secretario de Justicia y al Comisionado de Instituciones Financieras, en adelante el

---

[7] Apéndice del recurso de *Certiorari*, págs. 276-279, 577-580.

[8] Véase lista sobre tasas de interés sobre sumas dispuestas por sentencia por un tribunal, preparada por la Oficina del Comisionado de Instituciones Financieras, Apéndice del recurso de *Certiorari*, pág. 209.

Comisionado, se expresaran sobre el planteamiento constitucional de los peticionarios.

En cuanto al caso (KEF 1994-0131), el 9 de enero de 2004, la ACT-en cumplimiento con la sentencia parcial del 27 de octubre de 2003 del Tribunal de Primera Instancia-consignó $3,312,668.55.[9] Esta suma incluía los intereses a razón del uno por ciento (1%) computados desde el 26 de abril de 1994, fecha de radicación de la demanda de expropiación, hasta la consignación final.

El 2 de febrero de 2004, la ACT en cumplimiento con la sentencia parcial del 27 de octubre de 2003 del Tribunal de Primera Instancia consignó $57,385.64.[10] Esta suma incluía los intereses a razón del uno por ciento (1%) computados desde el 26 de abril de 1994, fecha de radicación de la demanda de expropiación, hasta la consignación final.

El 3 de febrero de 2004, en cumplimiento con la sentencia del 27 de octubre de 2003 del Tribunal de Primera Instancia, la OCIF presentó un escrito titulado "Memorando de la Oficina del Comisionado de Instituciones Financieras en cumplimiento de Orden".[11] Alegó, entre otras cosas, que la tasa de interés aplicable es la prescrita en el Reglamento 78-1 de la Junta Financiera[12], en adelante

---

[9] Apéndice del recurso de *Certiorari*, pág. 591.

[10] *Íd.*, pág. 292.

[11] *Íd.*, págs. 293-304, 594-605.

[12] Reglamento 78-1 de la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras, aprobado el 25 de octubre de 1988.

Reglamento 78-1, al momento de dictarse la sentencia. Arguyeron, además, que la Sección 5(a) de la Ley de Expropiación, *supra*, no es inconstitucional de su faz ya que la tasa de interés pagadera a las partes con interés no surge de dicha ley ni de la Regla 44.3 de Procedimiento Civil[13]. Sostuvieron, además, que la Sección 5(a) de la Ley de Expropiación, *supra*, provee de manera adecuada la justa compensación según dispuesta en el Art. II de la sec. 9 de la Constitución de Puerto Rico. Tampoco procedía una tasa de interés equivalente a una inversión a diez (10) años como sostenían los peticionarios ya que la partida por concepto de interés pagadero sobre la sentencia adviene pagadera al momento de dictarse la sentencia, y por ello se tiene que considerar la tasa de interés vigente a esa fecha. Concluyó, que la aplicación del Reglamento 78-1 a las partes con interés no resultaba inconstitucional ya que la tasa de interés dispuesta por éste alegadamente incorpora y refleja la realidad económica de Puerto Rico.

El 19 de febrero de 2004, los peticionarios, presentaron en el Tribunal de Primera Instancia, un escrito titulado "Réplica a Memorando de la Oficina del Comisionado de Instituciones Financieras en Cumplimiento de Orden."[14] Alegaron, entre otras cosas, que la Ley de Expropiación, *supra*, era inconstitucional de su faz, ya que el método provisto por la misma para determinar la tasa de interés

---

[13] 32 L.P.R.A. Ap. III, R. 44.3

[14] Apéndice del recurso de *Certiorari*, págs. 305-314, 607-616.

aplicable en casos de expropiación forzosa, "…es el germen de su propia inconstitucionalidad."[15] Arguyeron, que el que la OCIF estableciera un (1) solo tipo de interés, sin tomar en cuenta las diferentes tasas de interés utilizados en los distintos instrumentos de inversión disponibles en el mercado usurpaba a los tribunales su función judicial de determinar la justa compensación. Además, colocaba al sujeto de la expropiación en una posición de desventaja donde corría el riesgo de que el interés variable establecido en ley no proveyera la justa compensación requerida por la Constitución de Puerto Rico. Indicaron, que para remediar tal situación, se debía tomar en cuenta las fluctuaciones de varios instrumentos con diferentes tasas de interés desde la fecha de expropiación hasta su pago total, escogiendo aquella que mejor provea una justa compensación. Sostuvieron, además, lo siguiente:

> Por otro lado, la Ley de Expropiación establece que la tasa aplicable es aquella 'que esté en vigor al momento de dictarse la sentencia'. Al fijar un solo tipo de interés (el fijado a la fecha de la sentencia), el estatuto viola la constitución si las variaciones en el tipo de interés durante el periodo en cuestión resultan en que el expropiado reciba menos de la justa compensación que exige nuestra Constitución. Según quedó claramente establecido en el Memorando sobre Tasa de Interés sometido por la compareciente, esa legislación no toma en cuenta las fluctuaciones en el mercado local de intereses entre el tiempo en que la propiedad fue expropiada y la fecha que se dicta la sentencia. Este defecto en la Ley puede causar, por un lado, que el gobierno pague una tasa de interés mayor a la que le

---

[15] *Íd.*

corresponde si los intereses al momento de dictarse la sentencia son mayores a los intereses vigentes entre el momento de expropiación y el momento de la sentencia. El defecto en ley también puede causar que el gobierno pague una tasa de interés menor a la que le corresponde recibir el afectado, como parte de su justa compensación.

Señalaron, que el vicio constitucional de la Ley de Expropiación, *supra*, provenía de su propio texto, por lo cual la ley resultaba inconstitucional de su faz.

El 19 de febrero de 2004, notificada el 24 de febrero de 2004, el Tribunal de Primera Instancia emitió sentencia determinando que el interés dispuesto en la Ley de Expropiación, *supra*, de uno por ciento (1%) era justo y equitativo para ambas partes.[16]

Inconformes, el 25 de marzo de 2004, los peticionarios presentaron recursos de apelación en el Tribunal de Apelaciones señalando que el foro de primera instancia incidió al declarar constitucional la tasa de interés prescrita en la Ley de Expropiación, *supra*.[17] Alegaron, entre otras cosas, que el por ciento fijo por semestre establecido por el Reglamento 78-1 de la OCIF, no tomaba en cuenta las fluctuaciones en las tasas de interés en los años entre la fecha de la expropiación y la fecha del pago. Esta situación provocaba que el gobierno pagara una tasa de interés menor a la que le correspondía recibir a los peticionarios como parte de su justa compensación en violación a la cláusula de justa compensación de la

---

[16] *Íd.*, págs. 315-318, 617-620.

[17] *Íd.*, págs. 4-318, 319-620.

Constitución de Puerto Rico. Señalaron, además, que la Ley de Expropiación, *supra*, establecía una tasa de interés basada en un solo instrumento de inversión, sin tomar en cuenta las tasas de interés dada por los distintos instrumentos de inversión disponibles en el mercado. El establecer un solo tipo de tasa de interés, sin tomar en cuenta las tasas de interés dadas por los distintos instrumentos del mercado, usurpaba a los tribunales la función judicial de determinar la justa compensación. Indicaron, además, que los foros judiciales federales evaluaban cada caso por separado y adoptaban aquella tasa de interés que resultara más justa para el caso que tuviera ante sí. Arguyeron, además, que la sentencia dictada por el Tribunal de Primera Instancia, en cuanto a la tasa de interés aplicable al pago de una justa compensación no reflejaba la realidad económica de Puerto Rico.

El 23 de julio de 2004, el Procurador General presentó su alegato ante el Tribunal de Apelaciones.[18] En esencia, argumentó que la tasa de interés dispuesta en la Ley de Expropiación, *supra*, y el Reglamento 78-1 de OCIF, era una justa y equitativa para las partes. Sin embargo, recomendó que se debía devolver el caso al foro de primera instancia para que se hicieran los cómputos correspondientes acorde con las tasas de interés prevalecientes en el mercado, según surgía del Reglamento 78-1 de OCIF y conforme éstas

---

[18] *Íd.*, págs. 653-702.

variaron desde la fecha de expropiación hasta la fecha del pago total de la compensación.

Ese mismo día, los peticionarios presentaron una *Réplica* al alegato presentado por el Procurador General.[19] Aceptaron el planteamiento del Procurador General de que se computara el interés según variaba en el mercado desde la fecha de incautación hasta el total pago de la compensación por la ACT. Sin embargo, rechazaron la posición del Procurador General de que la tasa de interés variable era aquella dispuesta por el Reglamento 78-1 de la OCIF, ya que ésta se basaba en "…la tasa equivalente al rédito de los 'U.S. Treasury Bills´ con vencimiento a seis (6) meses redondeado al ½ punto más cercano." Arguyeron que para que las tasas fluctuantes prescritas por el Reglamento 78-1 de la OCIF proveyeran una justa compensación, las mismas debían estar basadas en un índice que reflejara las condiciones económicas de Puerto Rico en una forma más adecuada.

El 13 de septiembre de 2004, la ACT presentó ante el Tribunal de Apelaciones un escrito titulado, "Oposición a Réplica a Moción Urgente Exponiendo la Posición de la Autoridad de Carreteras y Transportación."[20] Solicitó, entre otras cosas, que se declarara la validez constitucional de la Ley de Expropiación, *supra*, y que en casos de expropiaciones se utilizara el tipo de interés

---

[19] *Íd.*, págs. 715-720.

[20] *Íd.*, págs. 721-730.

anual que estuviera vigente al momento de dictarse la sentencia por el Tribunal de Primera Instancia. Y que dicho interés aplicara a todo el periodo comprendido entre la fecha del *"taking"* hasta el pago de la suma adicional, sin que se computaran intereses por la suma originalmente consignada.

El 29 de septiembre de 2004, los peticionarios presentaron en el Tribunal de Apelaciones una *Dúplica*, donde sostuvieron que la tasa prescrita por ley debe ser sólo una de las alternativas a considerarse y no la única.[21]

El 29 de julio de 2005, notificada el 5 de agosto de 2005, el Tribunal de Apelaciones emitió *Sentencia* acogiendo los argumentos del Procurador General.[22] El foro intermedio apelativo sostuvo la constitucionalidad de la Ley de Expropiaciones, *supra*, y confirmó la sentencia emitida por el Tribunal de Primera Instancia. Sin embargo, devolvió el caso al foro de primera instancia para que éste hiciera los cómputos correspondientes acorde con las tasas de interés prevalecientes en el mercado-según surge del Reglamento 78-1 de la OCIF-y conforme éstas habían variado semestralmente desde la fecha de expropiación hasta la fecha del pago total de la justa compensación.

Insatisfechos, los peticionarios, acuden ante nos mediante recurso de *Certiorari*, alegando la comisión de los errores siguientes:

---

[21] *Íd.*, págs. 731-733.

[22] *Íd.*, págs. 740-774.

**A. ERRÓ EL TRIBUNAL DE APELACIONES AL CONFIRMAR LA SENTENCIA DICTADA POR EL TPI EN LA QUE SOSTUVO LA VALIDEZ CONSTITUCIONAL DE LA TASA DE INTERES PRESCRITA POR LA SECCIÓN 5(b) DE LA LEY DE EXPROPIACIONES. 32 L.P.R.A. § 2908.**

**B. ERRÓ EL TRIBUNAL DE APELACIONES AL DETERMINAR QUE LAS TASAS VARIABLES APLICABLES SON LAS DISPUESTAS POR EL REGLAMENTO 78-1 DE LA OCIF PARA EL PAGO SENTENCIA POR EL ELA.**

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver los asuntos traídos ante nuestra consideración. Veamos.

II

A

El Artículo II, Sección 7 de la Constitución de Puerto Rico consagra el derecho fundamental del ser humano al disfrute de la propiedad.

Sección 7. **Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad.** No existirá pena de muerte. **Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes.** No se aprobarán leyes que menoscaben obligaciones contractuales. Las leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo. (Énfasis suplido)

El Artículo II, Sección 9, de la Constitución de Puerto Rico, dispone lo siguiente:

**No se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley**… (Énfasis Suplido)

La facultad de tomar, o expropiar propiedad privada para fines públicos es uno de los poderes inherentes que posee el Estado. En caso de ejercitar ese poder inherente, el Estado tiene la obligación constitucional de pagar una justa compensación, o valor, por la propiedad privada expropiada y actuar conforme al procedimiento provisto por ley.[23] En ese sentido, la Asamblea Legislativa puede establecer limitaciones al derecho de propiedad en beneficio del bienestar general.[24] Ello es así porque el disfrute de la propiedad privada, aunque de carácter fundamental, no es un derecho absoluto.[25]

La obligación del Estado de pagar una justa compensación se puede manifestar de tres (3) maneras: (1) mediante el ejercicio directo del poder de dominio eminente, instando un recurso de expropiación; (2) por medio de su reglamentación, y (3) cuando ocurre una incautación de hecho al afectar sustancialmente el uso de la propiedad físicamente.[26]

Similar protección al derecho de propiedad se encuentra en la Constitución de los Estados Unidos.

---

[23] E.L.A. v. Soc. Civil Agrícola e Industrial, 104 D.P.R. 392, 398 (1975).

[24] Velázquez Velázquez v. E.L.A., 135 D.P.R. 84, 88 (1994).

[25] Íd.; Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943 (1991); Vélez v. Srio. de Justicia, 115 D.P.R. 533 (1984); E.L.A. v. Márquez, 93 D.P.R. 393 (1966).

[26] Velázquez Velázquez v. E.L.A., supra; Culebra Enterprises Corp. v. E.L.A., supra; Sucn. García v. Autoridad de Carreteras, 114 D.P.R. 676 (1983); Olivero v. Autoridad de Carreteras, 107 D.P.R. 301 (1978).

Establece la Quinta Enmienda de ese magno documento que nadie será privado de su vida, libertad o propiedad sin el debido proceso de ley, ni se tomará la propiedad privada para uso público sin una compensación justa.[27]

La Ley de Expropiación, *supra*, regula los procedimientos de expropiación forzosa que realiza el Estado. El propósito esencial de un procedimiento de expropiación forzosa es la fijación de la compensación "justa y razonable" de la propiedad expropiada.[28] Como parte integral de la justa compensación a concederse, la Ley de Expropiación, *supra*, ordena el pago de intereses cuando existe una diferencia entre la suma fijada por la parte que solicita la expropiación y la cantidad que determine el Tribunal como justa compensación. Sobre este particular, la Sec. 2908 de la Ley de Expropiación, *supra*, dispone lo siguiente:

> En cualquier sentencia dictada en un procedimiento de expropiación forzosa para la adquisición de propiedad privada o de cualquier derecho sobre la misma para uso público o aprovechamiento en beneficio de la comunidad, entablado por el Estado Libre Asociado de Puerto Rico o Gobierno Estatal directamente, o a su nombre por cualquier agencia, autoridad, instrumentalidad o funcionario del Estado Libre Asociado de Puerto Rico, en que la cantidad determinada por el tribunal como justa compensación por la propiedad o los derechos en la misma objeto de tal procedimiento, tanto en caso de trasmisión del título como de la mera posesión sin trasmisión del título, sea

---

[27] Hampton Development Corp. V. E.L.A., 139 D.P.R. 877, 888 (1996); Heftler Internacional Inc. v. J. de P., 99 D.P.R. 467, 473-474 (1970).

[28] E.L.A. v. Tribunal Superior, 86 D.P.R. 692 (1962).

mayor que la cantidad fijada por el demandante y depositada en el tribunal como justa compensación por tal propiedad o derechos en la misma, el Estado Libre Asociado de Puerto Rico pagara el importe de la diferencia entre la suma así fijada por el demandante y depositada por el en el tribunal y la cantidad que a tal efecto haya determinado el tribunal como justa compensación por dicha propiedad o derechos en las mismas objeto de tal procedimiento, **con intereses a razón del tipo de interés anual que fije por Reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras y que este en vigor al momento de dictarse la sentencia, de conformidad con la Regla 44.3, Ap. III de este título, sobre tal diferencia a contar desde la fecha de la adquisición de tal propiedad o derechos y desde esta fecha hasta la del pago de dicha diferencia;** Disponiéndose, que en los casos en que el demandado o demandados apelen de la sentencia fijando la compensación y el Tribunal Supremo confirmase dicha sentencia o rebajase la compensación concedida, el apelante no recobrara intereses por el periodo de tiempo comprendido entre la fecha de radicación del escrito de apelación y hasta que la sentencia del Tribunal Supremo fuera final, firme y ejecutoria. (Énfasis Suplido)

El pago de intereses es una parte integral del mandato constitucional sobre justa compensación.[29] La tasa tiene que ser una "razonable".[30] En Seaboard Airline v. U.S., 261 U.S. 299, 306 (1923), el Tribunal Supremo de Estados Unidos dispuso lo siguiente:

The requirement that 'just compensation' shall be paid is comprehensive and includes all elements and no specific command to include interest is necessary when interest or its equivalent is a part of such

---

[29] E.L.A. v. Rexco Industries, Inc., 137 D.P.R. 683, 689 (1994).

[30] Íd., pág. 687.

> compensation. Where the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added.

Expresamos en E.L.A. v. Rexco, *supra*, citando a Seaboard Airline v. U.S., *supra*, que la justa compensación es, "…**aquella que ponga al dueño en una posición pecuniaria tan buena a la que estaría si la propiedad no se hubiera expropiado**."(Traducción y énfasis suplido)

Hemos sostenido, de la misma forma que el Tribunal Supremo de Estados Unidos, que la determinación de una justa compensación es esencialmente un ejercicio judicial y no legislativo.[31] En E.L.A. v. Rexco, *supra*, citando a Monongahela Navigation Co. v. U.S., 148 U.S. 312, 327 (1893) y U.S. v. 50.50 Acres of Land, 931 F.2d 1349 (9th Cir. 1991), sostuvimos lo siguiente:

> [La Justa Compensación] es una controversia judicial y no legislativa. La legislatura puede determinar qué propiedad privada se necesita para propósitos públicos ésta es una controversia de carácter político y legislativo; pero cuando se ha ordenado la expropiación, entonces la controversia sobre la compensación es judicial.…La constitución ha declarado que se tiene que pagar justa compensación y que su determinación es una cuestión que le compete a los tribunales.

---

[31] *Íd*; Monongahela Navigation Co. v. United States, *supra*,; U.S. v. 50.50 Acres of Land, 931 F.2d 1349 (9th Cir. 1991).

B

La Ley de Expropiación, *supra*, establece que la tasa de interés que fije la Junta Financiera de la OCIF es la que se utilizará para calcular intereses en casos de expropiación forzosa.[32] En E.L.A. v. Rexco, *supra*, invalidamos la imposición del seis por ciento (6%), como tasa de interés, anual, según disponía la Ley de Expropiación, *supra*, vigente al momento de dictarse la sentencia. Como resultado de esto, ordenamos que el Estado debía pagar los intereses que surgieren del Reglamento 78-1 de la OCIF que fue aprobado el 25 de octubre de 1988. El Reglamento 78-1 de la OCIF dispone lo siguiente:

> Sección 3 – Fijación de Tasas
> a) **Sentencias impuestas al Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades, corporaciones públicas o funcionarios en su carácter oficial**: La tasa equivalente al rédito de los 'U.S. Treasury Bills' con vencimiento a seis (6) meses redondeado al ½ punto más cercano.

El Reglamento 78-1 de la OFIC, establece que el "*U.S. Treasury Bills*" es el instrumento de inversión a utilizarse para calcular la tasa de interés. La legislación federal difiere en este aspecto con la Ley de Expropiación, *supra*. El interés fijado por la legislación federal se calcula a base de, "…at an annual rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for

---

[32] 29 L.P.R.A. sec. 2908.

the calendar week preceding the beginning of each additional year."[33]

Diversos tribunales federales, a nivel de circuitos apelativos, han evaluado, controversias relacionadas con la tasa de interés aplicable en casos de expropiación forzosa. En U.S. v. Blankinship, 543 F.2d 1272, 1276 (9th Cir. 1976), el Tribunal evaluó si la tasa de interés de seis por ciento (6%) prescrita en el *Declaration of Taking Act*[34], era aplicable a las expropiaciones realizadas en ese caso, independientemente de las tasas de interés prevalecientes en el mercado. El Tribunal, determinó, que la tasa de interés dispuesta en la ley federal del seis por ciento (6%) solo garantizaba una tasa de interés mínima que un tribunal podía imponer en casos de expropiación forzosa. En Washington Metropolitan Area Transit Authority v. One Parcel of Land, 706 F.2d 1312, 1322 (4th Cir 1983), el Tribunal sostuvo lo siguiente:

> The choice of an appropriate rate of interest is a question of fact, to be determined by the district court,…,and the district court's judgment will be upset **only if it reaches a clearly erroneous result. In fixing an award of interest, the district court should attempt to determine what 'a reasonable prudent person investing funds so as to produce a reasonable return while maintaining safety of principal' would have achieved.** (Citas omitidas y énfasis suplido)

---

[33] 40 U.S.C.A. sec. 3116(a)(2).

[34] 40 U.S.C.A. § 258a.

En relación a la determinación de la tasa de interés apropiada, en <u>Antoine v. U.S.</u>, 710 F.2d 477, 480 (8th Cir. 1983), el Tribunal sostuvo lo siguiente:

> **In determining the proper rate of interest it is necessary to examine the economic circumstances between the date of the taking and the date of payment instead of relying in the circumstances prevailing at the time of taking**. (Énfasis suplido)

En <u>U.S. v. 50.50 Acres of Land</u>, 931 F.2d 1349, 1355 (9th Cir. 1991), haciendo referencia a <u>U.S. v. Blankinship</u>, *supra*, el Tribunal sostuvo lo siguiente:

> The *Blankinship* court directed district courts to use a fact-specific approach to determine if the statutory rate was 'proper and reasonable', or if the Fifth Amendment required a higher rate of interest. Under *Blankinship*, the court must first determine if the statutory formula is constitutionally inadequate given the factual circumstances of the case. The court should receive evidence from each side and consider a variety of investment measures. If the court finds the statutory formula to be inadequate, it must determine the appropriate rate to be used.

En <u>U.S. v. 429.59 Acres of Land</u>, 612 F.2d 459, 464 (9th Cir. 1982), el Tribunal sostuvo lo siguiente:

> The payment of interest on deficiency awards in condemnation cases is designed to satisfy the constitutional standard of just compensation by putting the owner 'in as good position pecuniarily as he would have occupied if his property had not been taken.' **It is assumed that a person who received the pecuniary value of his property as of the date of taking would invest these funds in a reasonably prudent manner**. Thus, it is proper, when payment of just compensation is delayed, to fix interest on any deficiency award at the rate **'a reasonably prudent person investing funds so as to produce a reasonable return while**

**maintaining safety of principal'** would receive. The Commission properly carried out the District Court's instruction.

Because a reasonably prudent investor would diversify his risk, it is proper to consider the rate of interest paid on different types of securities with different maturities. The Commission did precisely this. The Commission considered interest rates paid on a wide range of government and private obligations with both short-term and long-term maturities. In determining the appropriate interest rate, the Commission selected a composite of four of these securities six-month Treasury bills, four to six-month prime commercial paper, ninety-day prime bankers acceptances, and six month bank certificates of deposit. The Commission then averaged the interest rates paid on these composite securities throughout the period from the date of taking to the time of the Commission's report.

United States v. Blankinship, *supra*, does not require the application of any fixed formula for interest rate determinations in condemnation cases. In Blankinship, *supra*, an interest rate determination was remanded for reconsideration because the trial court did not consider interest rates paid on government obligations with maturities greater than 180 days. The Commission considered such evidence in our case. The fact that it chose not to include such interest rates in its ultimate calculation of a reasonable rate of interest is not reversible error. Nor did the Commission err by compounding the 6.635 average rate of interest to arrive at a figure of 7.4 percent simple interest per annum. **Compounding of interest is appropriate to compensate the landowners for the loss of use of the interest that the deficiency award would have been producing for them during the interim.** (Citas omitidas y énfasis suplido)

Como resultado, en parte, de la jurisprudencia antes citada, el Congreso derogó la tasa mandatoria de interés

del seis por ciento (6%) dispuesta en el *Declaration of Taking Act*, Pub.L. No. 99656.  De igual forma, como resultado de los casos E.L.A. v. Rexco, *supra*, y Hampton Development Corp. v. E.L.A., *supra*, nuestra Legislatura enmendó la Ley de Expropiación, *supra*, para eliminar la tasa de seis por ciento (6%) de interés en casos de expropiación.  Posteriormente, la Legislatura de Puerto Rico enmendó la Ley de Expropiación, *supra*, para que el Estado pagara los intereses que surgieren del Reglamento 78-1 de la OCIF.

C

Está firmemente establecido en nuestro ordenamiento jurídico que un estatuto es y se presume constitucional hasta que se resuelva lo contrario.[35]  Una ley puede ser declarada inconstitucional de su faz o en su aplicación.[36] Sin embargo, antes de declarar inconstitucional una ley, el tribunal examinará primero si existe alguna interpretación razonable del estatuto.[37]  En Nogueras v. Hernández Colón, 127 D.P.R. 405, 412, señalamos lo siguiente:

> Por último, reafirmamos el postulado fundamental de hermenéutica constitucional que establece que al examinar un estatuto, 'el Poder Judicial—en abono de una deferencia hacia el Poder Legislativo'—debe

---

[35] Nogueras v. Hernández Colón, 127 D.P.R. 405, 412 (1990); Cerame-Vivas v. Srio. de Salud, 99 D.P.R. 45, 51 (1970); Esso Standard Oil v. A.P.P.R., 95 D.P.R. 772, 783 (1968).

[36] Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, 144 D.P.R. 1, 22 (1997).

[37] Pueblo v. Santiago Feliciano, 139 D.P.R. 360, 407 (1995); Ashwander v. Valley Authority, 297 U.S. 288, 346 (1936).

esforzarse por lograr interpretaciones congruentes y compatibles con el mantenimiento de la constitucionalidad de una ley.

### III

Por estar íntimamente relacionados ambos señalamientos de error los discutiremos en conjunto.

Con el trasfondo normativo antes expuesto, pasamos a resolver si erró el Tribunal de Apelaciones al modificar y de esa forma confirmar la sentencia emitida por el Tribunal de Primera Instancia. En su sentencia, el foro intermedio apelativo dispuso que el utilizar solo la tasa de interés vigente al momento de dictar la sentencia, no proveía una justa compensación conforme a la Constitución, ya que esta tasa no reflejaba los cambios acaecidos en el mercado entre la fecha de expropiación y la fecha del pago total por los terrenos expropiados. Sostuvo además, lo siguiente:

> Así las cosas, en ánimo de cumplir con la justicia, entendemos que el Tribunal de Primera Instancia debe resolver lo concerniente a los cómputos correspondientes al pago de intereses en los casos ante nos, **tomando en consideración que la imposición de tales intereses debe computarse dividiendo el período de tiempo en diferentes semestres y aplicando a cada semestre la tasa de interés aplicable al Estado en ese semestre, según expuso la parte apelada en su alegato.**
> …
> No obstante, se devuelve el caso al Tribunal de Primera Instancia para que éste haga los cómputos correspondientes acorde con las tasas de interés prevalecientes en el mercado—según surgen del Reglamento 78-1 de la OCIF y conforme éstas han variado semestralmente desde la fecha de expropiación hasta la fecha del pago total

de la justa compensación en ambos casos. (Énfasis suplido)

Ambas partes están de acuerdo con esta parte de la sentencia del foro intermedio apelativo. No obstante, la parte peticionaria sostiene que no es correcto que las tasas de interés variables aplicables sean aquellas dispuestas por el Reglamento 78-1 de la OCIF para el pago de sentencias que constituyen obligaciones del Estado.

En primer lugar, coincidimos con el Tribunal de Apelaciones en que se debe rechazar una lectura literal de la Sec. 5(b) de la Ley de Expropiación, *supra*, según la cual aplicaría la tasa de interés prevaleciente al momento de dictarse la sentencia, la cual en el presente caso correspondería a una tasa de uno por ciento (1%). En el presente caso, la incautación de la propiedad ocurrió en el año 1994, sin embargo no fue hasta el año 2003 que se dictó la sentencia final. <u>Durante ese período de tiempo, la fijación de intereses por parte de la OCIF varió semestralmente</u>.

Concluimos que en los casos donde el período entre la incautación y el pago total del Estado exceda un semestre, el Tribunal de Primera Instancia debe considerar las variaciones en las tasas de interés durante los distintos semestres. **De esta forma se asegura que las tasas de interés que se apliquen en un momento dado reflejen las condiciones existentes en ese momento en el mercado para instrumentos financieros. Siendo el instrumento seleccionado por OCIF uno con un término de seis (6) meses,**

**corresponde que las tasas aplicables se revisen semestralmente, tal como se estipula en el Reglamento 78-1 de la OFIC.**

En E.L.A. v. Rexco, *supra*, dispusimos que las fluctuaciones en el mercado tienen que ser consideradas al computar el interés aplicable en casos de expropiación forzosa. Sin embargo, se le estaba dando una lectura literal a la Ley de Expropiación Forzosa, *supra*, cuando disponía que se utilizara el interés fijado por la OCIF que estuviera en vigor al momento de dictarse la sentencia. La intención de este Tribunal en E.L.A. v. Rexco, *supra*, fue que las tasas de intereses aplicables a casos de expropiación forzosa reflejaran las fluctuaciones imperantes en el mercado de valores. Para lograr dicho objetivo, se tienen que considerar las variaciones en las tasas de interés durante los distintos semestres. De esta forma se cumple con el mandato constitucional de satisfacer una justa compensación en los casos de expropiación forzosa, consagrado en el Art. II, Sec. 9 de nuestra Constitución. Así pues, entendemos que la determinación del Tribunal de Apelaciones a estos efectos debe ser confirmada ya que cumple con el propósito establecido por este Tribunal en E.L.A. v. Rexco, *supra*.

De otro lado, los peticionarios entienden que las tasas de interes prescritas en el Reglamento 78-1 de la OCIF son inconstitucionales ya que las mismas no están basadas en un índice que refleje las condiciones económicas

de Puerto Rico en una forma adecuada. El Tribunal de Apelaciones sostuvo la constitucionalidad de las tasas de interés establecidas semestralmente por la OCIF. Compartimos tal óptica. Veamos.

El instrumento financiero utilizado en el presente por la OCIF para fijar la tasa de interés en los casos de "sentencias impuestas al Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades, corporaciones publicas o funcionarios en su carácter oficial", es los *"U.S. Treasury Bills",* que es el mismo utilizado en la jurisdicción federal para los mismos propósitos.[38] Este instrumento financiero, sea cual fuese el término de madurez del mismo, es el que el mercado considera como de menor riesgo <u>crediticio</u>, entre todos los instrumentos financieros disponibles. Es por ende, el instrumento financiero que una persona razonable, actuando prudentemente, invertiría sus fondos para producir un rédito razonable sin arriesgar el valor del principal.

Debemos aclarar que el riesgo al valor del principal tiene dos componentes; uno es el riego crediticio y el otro es el riesgo de la inflación que reduce el valor real del principal. El riesgo crediticio es aquel cuando el deudor no puede pagar el principal (con intereses acumulados) al acreedor. Este riesgo es casi inexistente en el caso de los *"U.S. Treasury Bills",* como señaláramos anteriormente.

---

[38] En la jurisdicción federal se utiliza la tasa de los "U.S. Treasury Bills" con una madurez de un (1) año, mientras que en la jurisdicción nuestra la OCIF utiliza la tasa de los "U.S. Treasury Bills" con una madurez de seis (6) meses.

El riesgo al valor real del principal de cualquier instrumento financiero, que representa la inflación, está considerado en la tasa de interés establecida por el mercado. En otras palabras, las tasas de interés de todo instrumento financiero incorporan, las expectativas inflacionarias en un momento dado. En el caso de un instrumento financiero con un término de madurez de, por ejemplo, seis (6) meses, la tasa de mercado prevaleciente incorpora las expectativas inflacionarias para los próximos seis (6) meses. Similarmente, la tasa de mercado prevaleciente para un instrumento con un término de madurez de, digamos, cinco (5) años, incorpora las expectativas inflacionarias para los próximos cinco (5) años.

En el caso, donde la tasa de interés aplicable, como el caso de autos, es la de un instrumento financiero con un término de madurez de seis (6) meses, para proteger el valor del principal del riesgo inflacionario, durante un periodo en exceso de seis (6) meses, es necesario que la referida tasa se revise semestralmente. De esta manera se cumple con el requisito constitucional de justa compensación del inmueble expropiado. Por lo que coincidimos con el foro intermedio apelativo sobre este asunto.

La constitucionalidad del uso de las tasas de interés establecidas en el Reglamento 78-1 ya fue resuelto en E.L.A. v. Rexco, *supra*. El exigir una compensación justa

no equivale a exigir la compensación equivalente al método de inversión alternativo que más alto rendimiento produciría para la compensación derivada de una expropiación; meramente equivale a la compensación que recibiría una persona prudente que invierta una cantidad que produzca un rédito razonable que a la misma vez mantenga la seguridad del principal invertido.

Siendo ello así, entendemos que el Tribunal de Apelaciones resolvió correctamente al determinar que las tasas de interés a utilizarse serían las establecidas semestralmente por la OCIF en el presente, o sea, las tasas de los *U.S. Treasury Bills* con un término de madurez de seis (6) meses.

A la luz de los pronunciamientos previamente esbozados, *resolvemos*, que en los casos de expropiaciones, donde el período entre la incautación y el pago total del Estado exceda un semestre, el Tribunal de Primera Instancia tiene que considerar las variaciones en las tasas de interés durante los distintos semestres, según surgen del Reglamento 78-1 de la OCIF. La imposición de los intereses debe computarse dividiendo el período de tiempo en diferentes semestres y aplicando a cada semestre la tasa de interés efectiva en ese semestre.

Es norma reiterada, que antes de decretar la inconstitucionalidad de una ley, el tribunal examinará primero si existe alguna interpretación razonable del estatuto, que le permita soslayar la cuestión

constitucional.[39]    Entendemos que el foro intermedio apelativo brindó una interpretación razonable al estatuto aquí en controversia, por lo que no procede el planteamiento de inconstitucionalidad presentado por la parte peticionaria.

En mérito de lo anterior, concluimos que el Tribunal de Apelaciones actuó correctamente al confirmar la sentencia dictada por el Tribunal de Primera Instancia en cuanto ésta sostuvo la validez constitucional de la Sec. 5(b) de la Ley de Expropiación, *supra*. También concluimos que el Tribunal de Apelaciones actuó correctamente al devolver el caso al Tribunal de Primera Instancia para que éste hiciera los cómputos correspondientes de conformidad con las tasas de interés prevalecientes en el mercado según surgen del Reglamento 78-1 de la OCIF y conforme éstas han variado semestralmente desde la fecha de la expropiación hasta la fecha del pago total de la justa compensación en ambos casos.

IV

Por los fundamentos antes expuestos confirmamos, la Sentencia recurrida.

*Efraín E. Rivera Pérez*
*Juez Asociado*

---

[39] E.L.A. v. Aguayo, 80 D.P.R. 552, 596 (1958); Ashwander v. Valley Authority, *supra*.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

La Autoridad de Carreteras y
Transportación de Puerto Rico
          Recurrida
              v.
Adquisición de 8554.741 Metros
Cuadrados en el Barrio Canas
del Término Municipal de
Ponce, et als
          Peticionaria

La Autoridad de Carreteras y          CC-2005-952
Transportación de Puerto Rico
          Recurrida
              v.
Adquisición de 120,925.207
Metros Cuadrados en el Barrio
Canas del Término Municipal de
Ponce, et als
          Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 9 de octubre de 2007.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, confirmamos la Sentencia recurrida.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. Las Juezas Asociadas señora Fiol Matta y señora Rodríguez Rodríguez no intervinieron.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo