**Jacob Wallace ANTOINE, on his own behalf and also on behalf of his relatives similarly situated, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 80–1143.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1980.

Decided Jan. 12, 1981.

Gary E. Davis, Gregory, S. D., for appellant.

Robert D. Clark, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and MURPHY, District Judge.*

HEANEY, Circuit Judge.

Appellant Jacob W. Antoine, an enrolled member of the Rosebud Sioux Tribe of South Dakota, challenges the dismissal of his suit to recover possession or damages for the government's failure to issue a patent for a parcel of land within the Rosebud reservation. We reverse.

Antoine claims an interest in a 320-acre tract of land pursuant to Article 6 of the Sioux Treaty of April 29, 1868, 15 Stat. 635, which provides in part as follows:

> If any individual belonging to said tribes of Indians, or legally incorporated with them, being the head of a family shall desire to commence farming, he shall have the privilege to select, in the presence and with the assistance of the agent then in charge, a tract of land within said reservation, not exceeding three hundred and twenty acres in extent, which tract, when so selected, certified, and recorded in the "land-book," as herein directed, shall cease to be held in common, but the same may be occupied and held in the exclusive possession of the person selecting it, and of his family, so long as he or they may continue to cultivate it.

Antoine's great-grandfather, Wicatanynaun (a/k/a Remains Single), exercised his right under the 1868 Treaty and selected the 320-acre parcel in question in this action. A Sioux Land Certificate for the tract was approved by the Commissioner of Indian Affairs, recorded in the Sioux Land-Book and delivered to Wicatanynaun in September of 1884. The record shows, however, that Wicatanynaun died in late 1884 or in

---

* The Honorable DIANA E. MURPHY, United States District Judge, District of Minnesota, sitting by designation.

1885, and there is no evidence indicating whether he or his family occupied the tract in question. In 1915, Wicatanynaun's son, Charles Antoine, wrote to the Rosebud Indian Agency to inquire about the land described in the certificate. The agency's supervisor wrote a letter to Charles Antoine asking for information on Wicatanynaun's heirs; Charles Antoine provided that information in a letter to the supervisor. The supervisor then wrote another letter telling Charles Antoine that he must provide "sworn evidence from parties thoroughly familiar with all the facts." Affidavits of two Indian elders were subsequently filed with the agency, which confirmed the factual basis for Wicatanynaun's claim. Apparently, no further action was taken until 1977, when Jacob Antoine discovered evidence of the claim as he searched records to determine his ancestry.

The case was submitted to the district court on stipulated documentary evidence. The district court dismissed the claim, holding that Antoine had failed to prove that Wicatanynaun's entitlement had not lapsed. The court began by examining the operative words in Article 6 of the 1868 Treaty. That provision stated that once a tract of land had been selected by an Indian, certified, and recorded in the land-book, it "may be occupied and held in the exclusive possession of the person selecting it, and of his family, so long as he or they may continue to cultivate it." The district court viewed this language as granting to the selecting Indian a defeasible possessory interest, and we agree. Because it is clear that encouraging the Indians to engage in agriculture was seen at the time as the most promising means to "civilize" the Indian tribes, see generally F. Cohen, Handbook of Federal Indian Law 206–217 (1942), it is fair to conclude that the drafters of the 1868 Treaty contemplated that cultivation was an absolute condition to continued possession of the land.

If congressional action had ended with the 1868 Treaty, we would be compelled to agree with the district court that Antoine is entitled to no relief. In the latter part of the nineteenth century, however, Congress enacted a series of Allotment Acts which, in some cases, significantly changed the nature of Native American landholdings. The Act that applies in this case, the Sioux Allotment Act of March 2, 1889, 25 Stat. 888, provided: "[I]f any Indian has, under and in conformity with the provisions of [the 1868 Treaty], taken allotments of land * * * such allotments are hereby ratified and made valid, and such Indian is entitled to a patent therefor * * *." Id. at § 15. Thus, the 1889 Act rendered indefeasible the allotments made under the 1868 Treaty.

The district court suggested that the 1889 Act would save Antoine's claim if "Wicatanynaun or his family [had] fulfilled the conditions of the 1868 treaty." The court held, however, that a plaintiff bears the burden of proving that the 1868 Treaty conditions had been fulfilled and that Antoine had not met this burden because he had not shown that Wicatanynaun or his family cultivated the land between 1884 and 1889.

The district court appears to have accepted the government's position that the words "under and in conformity with [the 1868 Treaty]" authorized the granting of patents only to those Indians who were cultivating their land in 1889. For purposes of this appeal, we will also accept this interpretation of the 1889 Act. Nevertheless, we must disagree with the district court's disposition of this case because we believe that the burden of proof on the cultivation issue was improperly assigned to Antoine.

■ We first emphasize that a statute designed to safeguard the rights of Indians is to be broadly interpreted so as to give the Indians the maximum protection possible under the language of the enactments. As the Supreme Court recently reiterated, "statutes passed for the benefit of dependent Indian tribes * * * are to be liberally construed, doubtful expressions being resolved in favor of the Indians." Wilson v. Omaha Indian Tribe, 442 U.S. 653, 666, 99 S.Ct. 2529, 2537, 61 L.Ed.2d 153 (1979) (quoting Bryan v. Itasca County, 426 U.S. 373, 392, 96 S.Ct. 2102, 2112, 48 L.Ed.2d 710

(1976); *see United States v. Payne*, 264 U.S. 446, 448–449, 44 S.Ct. 352, 68 L.Ed. 782 (1924); *Choate v. Trapp*, 224 U.S. 665, 675, 32 S.Ct. 565, 569, 56 L.Ed. 941 (1912).

With this rule of construction in mind, we find we cannot agree with the district court's application of the 1889 Act. The statute provides that an Indian is entitled to a trust patent if he "has, under and in conformity with [the 1868 Treaty], taken allotments of land." We are satisfied that Wicatanynaun took such an allotment.[1] The 1868 Treaty provided that an Indian was entitled to exclusive possession of a tract of land once the plat had been "selected, certified, and recorded in the 'land-book,' as herein directed." It is undisputed that Wicatanynaun made his selection, it was certified and it was recorded in the Sioux land-book as provided in the Treaty. Indeed, in a letter to the Commissioner of Indian Affairs dated July 8, 1915, the supervisor of the Rosebud Indian Agency referred to Wicatanynaun's claim, stating, "From [the metes and bounds] description the land would be somewhat difficult to determine exactly, but it is a part of what later became the Rosebud Reservation, and that it has been alloted [sic] or otherwise hypothecated according to law is an absolute certainty." Thus, Wicatanynaun was one of the group of Indians who had, "under and in conformity with [the 1868 Treaty], taken allotments of land."

Because Wicatanynaun took an allotment, the 1889 Act entitled his heirs to a trust patent for the tract unless some intervening circumstance, such as the failure to cultivate, invalidated the allotment.[2] The government has greater access to records of

Indian land claims, including records of forfeited allotments, and we think it most sensible to place the burden on the government to show that an allotment, although "taken," has been given up. The documentary evidence in this record clearly establishes Antoine's prima facie claim to entitlement and the government, therefore, bears the burden of showing that that right was lost due to subsequent events.

It is particularly appropriate in this case to require the United States to prove that Wicatanynaun or his family did not cultivate the allotted tract. When Wicatanynaun's son first inquired about his father's allotment, the Indian agency asked him to provide further information about his claim. The only specific evidence requested, however, was proof of his heirship; the government did not ask for proof of cultivation, nor did it indicate in any way that cultivation might be an issue. This suggests that not even the government's representatives thought that continued cultivation was a requirement of the 1889 Act. More important, the early actions of the government officials would make it grossly unfair to now require that Antoine prove cultivation by his ancestors. The Indian agency could easily have obtained information confirming or denying cultivation when Wicatanynaun's son sought to obtain his father's allotment, but it did not ask for such information. Instead, it asked for other information which was substantially provided to it.[3] Consequently, Antoine's ancestors did all that the Indian agency required at the time and yet the government failed to issue the patent. Under these circumstances, the government should bear the burden of

---

1. The Treaty of 1868 does not contain the term "allotment." That word, however, is a term of art meaning "a selection of specific land awarded to an individual allottee from a common holding." *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 142, 92 S.Ct. 1456, 1466, 31 L.Ed.2d 741 (1972). This is an accurate description of the land interest granted by the 1868 Treaty and claimed by Antoine.

2. The United States also argues that Wicatanynaun's descendants are not entitled to his allotment because his sole heirs at his death, his widow and two children, each took allotments

in their own names under the 1889 Act. This argument is without merit. It is clear that allotments are inheritable, *see generally* F. Cohen, Handbook of Federal Indian Law 229–236 (1942), and the fact that Wicatanynaun's family members became entitled to allotments in their own right after his death does not defeat their claim based on heirship.

3. The government apparently does not now challenge Antoine's status as an heir of Wicatanynaun.

proving that other reasons justified the failure to issue the patent. *See Arenas v. United States*, 322 U.S. 419, 64 S.Ct. 1090, 88 L.Ed. 1363 (1944).

Because the district court erroneously assigned the burden of proof on the issue of cultivation, we remand for the purpose of giving the government an opportunity to present further evidence on that question. If the government is not able to demonstrate, by a preponderance of the evidence, that Antoine's ancestors forfeited the allotment by failing to cultivate the land between 1884 and 1889, Antoine is entitled to relief.[4]

Our remand of this case makes it advisable to consider the question of the relief available to Antoine should the government fail to prove that the allotment was forfeited. In his complaint, Antoine asked the district court to award "either the allotment originally granted to Remains Single, or in the alternative, an allotment of 320 acres of other land of similar nature and value." Antoine also requested "such sum of money as will reasonably compensate them for the loss of use and income from the Remains Single allotment from the time that it was cancelled or revoked until the present time, plus interest."

■ The government challenges any award in this case, arguing that Antoine has failed to join an indispensable party defendant—the person or persons currently in possession of the 320-acre tract.[5] We are not persuaded that this omission precludes all relief in this case. This suit is brought pursuant to 25 U.S.C. § 345, which provides that the United States District Courts have jurisdiction

to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (*and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant*) * * *. [Emphasis added.]

This language is unequivocal. The United States, as the allotting agent, is the appropriate defendant in suits involving the right to an allotment. In our view, determining whether an Indian should have received a patent for an allotment of land under section 345 requires the presence of no party other than the United States. Furthermore, if it is determined that the United States wrongfully withheld a patent for an allotment, the government may be held liable for damages, regardless of the presence or absence of other potential parties. We are aware that the Court of Appeals for the Tenth Circuit has concluded that a damage award against the United States for loss of use, income and improvements on allotment land is not authorized by 25 U.S.C. § 345. *See Vicenti v. United States*, 470 F.2d 845 (10th Cir. 1972), *cert. dismissed*, 414 U.S. 1057, 94 S.Ct. 561, 38 L.Ed.2d 343 (1973). We are not convinced that the reasoning of *Vicenti* should preclude relief in this case, however. Unlike the situation in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), relied upon by the majority in *Vicenti*, the right to recover here depends entirely on the claimant's interest in allotted land. It is thus precisely the type of interest intended to be protected under section 345. Moreover, the lan-

4. There is no evidence in this record, nor in the legislative materials available to this Court, that indicate the meaning of the word "cultivate" as used in the 1868 Treaty. The word must be understood in light of the usage of the day, however, and we assume that it was not intended that a single person or family would be required to till an entire 320-acre tract in order to retain possession of the land. Thus, even minimal agricultural activity may qualify as "cultivation" under the Treaty. In determining whether the government has proven that

Antoine's ancestors forfeited the allotment by failing to cultivate, the district court must be mindful of this expansive meaning of the term.

5. The government also questions whether relief is appropriate in this case because the description of the land in the file copy of Wicatanynaun's certificate appears inconsistent with the rights of another claimant. The question of the sufficiency of the legal description is one for the district court in the first instance and we need not reach that issue here.

guage of 25 U.S.C. § 346 compels the conclusion that Congress intended to permit damage suits against the United States under section 345. Section 346 provides that the United States Attorney is to answer claims under section 345 by, *inter alia,* filing "a notice of any counterclaim, *set-off,* claim for damages, or other demand or defense whatsoever of the Government in the premises." (emphasis added). Obviously, the reference to set-offs in the statute has no purpose unless Congress contemplated that damage claims may be entertained under section 345.

■ Ordering a return of allotted land, however, is another matter; such relief is not available unless the person or persons currently in possession are given the opportunity to participate in the lawsuit as parties. Furthermore, because allotment in severalty is now generally disfavored as a matter of policy, *see Conroy v. Conroy,* 575 F.2d 175, 181 (8th Cir. 1978), and because Congress has prohibited further allotment of tribal lands, 25 U.S.C. § 461, we do not believe that the United States should be ordered to grant a substitute allotment to Antoine. In any event, we note that equitable relief such as specific performance may be barred by laches. *See Lemieux v. United States,* 15 F.2d 518 (8th Cir. 1926), *cert. denied,* 273 U.S. 749, 47 S.Ct. 458, 71 L.Ed. 872 (1927).

The order of the district court is reversed and the cause remanded with directions to give the United States an opportunity to prove that Wicatanynaun or his heirs forfeited their allotted land by failing to cultivate it prior to 1889. If the government fails to so prove forfeiture, the district court shall order the government to pay damages to Antoine and Wicatanynaun's other heirs.[6] Because the district court did not determine the measure of damages appropriate in this case, and because the par-

ties have not briefed the question before this Court, we express no opinion on that issue. Costs shall be taxed to the appellee.

---

6. In his complaint, Antoine asked the district court to certify this suit as a class action, naming Antoine as the representative for all descendants of Wicatanynaun. The district court has apparently taken no action on this request, but our review of the record indicates that it is likely that the requirements of Fed.R.Civ.P. 23 are satisfied in this case. Accordingly, the district court is directed to consider the request for class certification and to either grant the request or take other action that will ensure that the heirs of Wicatanynaun are properly represented and will share in any award based on the claim to Wicatanynaun's allotment.