Jacob Wallace ANTOINE, on his own behalf and also on behalf of his relatives similarly situated, Appellant,

v.

UNITED STATES of America, Appellee.

No. 82–1628.

United States Court of Appeals,
Eighth Circuit.

Submitted March 18, 1983.

Decided June 29, 1983.

Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., Phillip N. Hogen, U.S. Atty., R.P. Murley, Asst. U.S. Atty., Sioux Falls, S.D., Jacques B. Gelin, Albert M. Ferlo, Jr., Attys., Dept. of Justice, Washington, D.C., for appellee.

Charles Rick Johnson, Johnson, Eklund & Davis, Gregory, S.D., for appellant.

Before HEANEY, ROSS and FAGG, Circuit Judges.

FAGG, Circuit Judge.

This action was brought by Jacob W. Antoine, an enrolled member of the Rosebud Sioux Tribe, pursuant to 25 U.S.C. § 345 to recover an allotment of Indian land, or damages for its loss, selected by his ancestor Wicatanynaun. We have previously held that the United States should not be required to grant a substitute allotment, *Antoine v. United States,* 637 F.2d 1177, 1182 (8th Cir.1981), but we have also recognized the existence of a cause of action under section 345 to recover damages for loss of Wicatanynaun's allotment. *Id.* at 1181–82. The issue now before us is the extent of damages which are recoverable under this section. Following remand, the district court awarded damages to Wicatanynaun's descendants for the loss of the allotment based on its value at the time the certificate for the land was delivered to Wicatanynaun plus interest. *Antoine v. United States,* 537 F.Supp. 1163 (D.S.D. 1982). On appeal Antoine contends that the amount of the judgment is inadequate. We affirm in part and vacate in part.

In 1884, Wicatanynaun exercised his right provided by Article 6 of the Sioux Treaty of April 29, 1868, 15 Stat. 635, 637, to select a 320-acre tract of land to be held by himself and his family. A Sioux Land Certificate for the tract was approved by the Commissioner of Indian Affairs, recorded in the Sioux Land-Book, and delivered to Wicatanynaun on September 3, 1884. Article 6 of the Treaty further provided that a parcel so selected "may be occupied and held in the exclusive possession of the person selecting it, and of his family, so long as he or they may continue to cultivate it." *Id.*

The Sioux Allotment Act of March 2, 1889, § 15, 25 Stat. 888, 893, provided that "if any Indian has, under and in conformity with the provisions of [the 1868 Treaty], taken allotments of land ... such allotments are hereby ratified and made valid, and such Indian is entitled to a patent therefor ...." Wicatanynaun died late in 1884 or in 1885, and although he took an allotment under the 1868 Treaty, no trust patent for his selected parcel has ever been issued to his heirs. In 1915 Wicatanynaun's son, Charles Antoine, Jr., wrote to the supervisor of the Rosebud agency seeking to obtain the land his father had selected, but for some reason this effort was unsuccessful. This action, instituted by Wicatanynaun's great-grandson, represents a further effort to gain relief.

When this case was first before us, we noted that the 1868 Treaty required cultivation as a condition to continued possession of the land, and agreed with the district court, for purposes of the appeal, that the 1889 Act authorized issuance of patents only to those persons who were cultivating their parcels in 1889. 637 F.2d at 1179. We held that the district court should have placed on the government the burden of proving that some circumstance, such as failure of Wicatanynaun or his family to cultivate the allotted tract in conformity with the 1868 Treaty, defeated the right of Wicatanynaun's heirs to a trust patent for the land selected pursuant to the Treaty. *Id.* at 1180–81.

On remand the district court found that the land described in Wicatanynaun's certificate had been included in a certificate previously issued to one Blue Eyes on May 22, 1884. 537 F.Supp. at 1165–66. The district court concluded that both claimants could not have possessed and cultivated the land, and that the evidence indicated that Blue Eyes, not Wicatanynaun and his heirs, had remained in possession. *Id.* at 1166. Indeed, trust patents for land in the vicinity

of the Wicatanynaun claim were issued to Blue Eyes and Sarah Blue Eyes in 1901. *Id.*

In view of the conflicting certificates, the district court determined that Wicatanynaun and his descendants had done all they could do or were required to do to obtain their land in the circumstances, but they were prevented from performing the additional requirements by the government's neglect. *Id.* at 1166–67, *citing Arenas v. United States,* 322 U.S. 419, 434 n. 17, 64 S.Ct. 1090, 1096 n. 17, 88 L.Ed. 1363 (1944). As a consequence the district court held that Antoine had prevailed on the cultivation question and proceeded to consider the relief available. *Id.* at 1167.

▪ We disagree with Antoine's contention that the district court committed error in refusing to allow damages based on the present value of the original tract, compensation for the loss of income from the land, and interest on the lost income. Recovery of lost income in this action is precluded by the reasoning of *Vicenti v. United States,* 470 F.2d 845 (10th Cir.1972), *cert. dismissed,* 414 U.S. 1057, 94 S.Ct. 561, 38 L.Ed.2d 343 (1973). In that case the government had played a part in depriving the plaintiffs of possession of their allotments. The private defendants who had been occupying the allotments renounced any interest in the land and were dismissed from the suit. The Tenth Circuit held that the remaining damage claim against the United States for loss of use, income and improvements on allotment land was not authorized by section 345. 470 F.2d at 848.

By the same token, Antoine's claim for lost income is not facilitated by his reliance on *United States v. Pierce,* 235 F.2d 885 (9th Cir.1956). In *Pierce* the plaintiffs brought suit under section 345 to obtain trust patents for land they had selected and to recover income earned on the selected tracts. But the Secretary of the Interior had issued patents to other members of the tribe for part of the selected land, thus creating conflicting claims. The court held that the plaintiffs were entitled to receive the withheld patents for the nonconflicting allotments and the income that had been collected from these allotments by the United States. 235 F.2d at 890. However, there was no recovery from the government for income from the lands that had been selected by plaintiffs but patented to others. In the present case the United States has not collected income from a withheld allotment. Instead, income on the land selected by Wicatanynaun has been earned by private parties in possession of the tract by virtue of the earlier certificate issued to Blue Eyes. In our view, recovery of the lost income from the United States is not within the scope of a suit under section 345.

▪ We agree with the district court's approach to the measure of damages for loss of the land. The government's erroneous confirmation in 1884 of Wicatanynaun's choice of a previously selected tract of land, without opportunity for possession by him, constituted a taking of the very land that it purported to give him. 537 F.Supp. at 1167–68. This analysis is supported by *United States v. Creek Nation,* 295 U.S. 103, 55 S.Ct. 681, 79 L.Ed. 1331 (1935). In that case land held in fee by the Creeks was ceded back to the United States, but an error in the survey resulted in the government exercising control over unceded Creek land. Under an 1891 Act the government disposed of the Creek land, partly by allotment to members of the Sac and Fox Tribes and partly by sales to settlers. The Court held that the United States had taken the land and would be required to pay just compensation. *Id.* at 111, 55 S.Ct. at 684. The *Creek* case is similar to the present case. In both instances government error in determining title to land resulted in deprivation of property rights. *See also Confederated Salish and Kootenai Tribes v. United States,* 401 F.2d 785 (Ct.Cl.1968), *cert. denied,* 393 U.S. 1055, 89 S.Ct. 691, 21 L.Ed.2d 696 (1969) (taking effected by inclusion of tribal land in national forests following erroneous surveys).

▪ Regarding the amount of compensation recoverable in this case, the owner of property taken by the government is entitled to its value at the time of the taking plus an amount sufficient "to produce the

present full equivalent of that value paid contemporaneously with the taking." *United States v. Creek Nation, supra,* 295 U.S. at 111, 55 S.Ct. at 684; *accord United States v. Klamath and Moadoc Tribes,* 304 U.S. 119, 123, 58 S.Ct. 799, 801, 82 L.Ed. 1219 (1938). The goal is to place the owner in as good position pecuniarily as if the property had not been taken. *Phelps v. United States,* 274 U.S. 341, 344, 47 S.Ct. 611, 612, 71 L.Ed. 1083 (1927). Interest at a reasonable rate is a suitable measure for determination of the amount to be added. *Creek Nation,* 295 U.S. at 111, 55 S.Ct. at 684.

■■■ We find no error in the district court's determination of the value of the property in 1884. We conclude, however, that the district court's application of a five percent interest rate for all of the years involved was inappropriate. In determining the proper rate of interest it is necessary to examine the economic circumstances between the date of taking and the date of payment instead of relying on the circumstances prevailing at the time of taking. *Georgia-Pacific Corporation v. United States,* 640 F.2d 328, 365 (Ct.Cl.1980). Full and adequate compensation in this case requires a closer examination of the prevailing rates of interest over the course of the nearly one hundred years that have followed the taking.

In arriving at a five percent interest rate the district court relied on *United States v. Creek Nation, supra,* 295 U.S. at 111–12, 55 S.Ct. at 684–85, and *United States v. Sioux Nation,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980). In both cases a five percent rate of interest was used, but we do not read either case as dictating that a five percent rate must necessarily be applied in the present case. In *Creek Nation,* the Court noted that a reasonable rate of interest should be used and then concluded that five percent was a reasonable figure based on an 1866 treaty and relevant statutes. 295 U.S. at 111–12, 55 S.Ct. at 684–85. In considering *Creek Nation* we first observe the date of its decision and further note that we have found no treaty or statute

that persuades us that five percent is a reasonable figure for all years involved in this case. Moreover, in *Sioux Nation* the rate of interest was not an issue before the Court of Claims, *Sioux Nation v. United States,* 601 F.2d 1157 (Ct.Cl.1979), or the Supreme Court on certiorari. In both instances the five percent rate applied by the Indian Claims Commission in its 1974 decision was affirmed without specific discussion of the suitability of that figure. As a consequence, we do not view either *Creek Nation* or *Sioux Nation* as precluding application of a higher rate of interest than was used by the district court in light of the fact that the ultimate test is one of reasonableness.

We therefore vacate only that part of the district court's judgment pertaining to the rate of interest used to determine just compensation. On remand, we note that the district court may choose to examine a number of sources for guidance in arriving at a reasonable rate of interest. *See, e.g., Seaboard Airline Railway Co. v. United States,* 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664 (1923) (seven percent South Carolina statutory legal rate approved); *Miller v. United States,* 620 F.2d 812, 840 (Ct.Cl.1980) (Moody's Composite Index of Yields on Long Term Corporate Bonds); *United States v. 429.59 Acres of Land,* 612 F.2d 459, 465 (9th Cir.1980) (wide range of government and private obligations with various maturities); *United States v. Blankinship,* 543 F.2d 1272, 1276–77 (9th Cir. 1976) (United States Treasury securities, approval in dictum of reference to local legal rate).

Affirmed in part, vacated in part, and remanded for further proceedings in conformity with this opinion.