El Juez Asociado Señor Rivera Pérez
emitió la opinión, del Tribunal.
Se nos solicita la revisión de una Sentencia emitida por el Tribunal de Apelaciones, Región Judicial de San Juan, mediante la cual confirmó y modificó una Sentencia emi-tida por el Tribunal de Primera Instancia, Sala Superior de San Juan, que había declarado "con lugar” una solicitud de expropiación a favor de la Autoridad de Carreteras y *283 Transportación. Veamos los hechos acaecidos que originan el presente recurso.
r-H
El 26 de abril de 1994, la Autoridad de Carreteras y Transportación de Puerto Rico (ACT) presentó ante el Tribunal de Primera Instancia dos peticiones de expropiación forzosa para la adquisición de 8,554.741 y 120,925.207 metros cuadrados, respectivamente, en el Barrio Canas del término municipal de Ponce.(1) Como justa compensación, la ACT depositó $342,200 y $1,230,700, respectivamente. Se denominaron como partes con interés a Adriana Mercado de Wilson; Richard S., María Luisa y Margarita Ma-ría, de apellidos Wilson Mercado; David Mario y Eileen María, de apellidos Coffey Mercado, y Eileen Mercado O’hanlon, John Doe, Richard Doe, Eufemia Eileen Mercado, Adriana Luisa Mercado Parra, John Doe y Richard Doe (en conjunto, peticionarios).
Luego de un largo y accidentado desarrollo procesal, las partes se reunieron el 21 de octubre de 2003 y llegaron a unos acuerdos transaccionales en cuanto al valor de las propiedades en controversia.(2) Estas propiedades se valo-raron en $395,000 (KEF-1994-0133) y $4,252,679 (KEF1994-0131), respectivamente. Sin embargo, las partes no pudieron acordar la tasa de interés que debería pagar la ACT sobre la suma adicional pactada.(3) Por tal razón, los peticionarios expresaron que someterían un escrito para impugnar la constitucionalidad de la tasa de interés dis-puesta por la Ley de Expropiación Forzosa de 12 de *284 marzo de 1903 (Ley de Expropiación),(4) según enmendada, o de su aplicación respecto a la tasa de interés promulgada por la Oficina del Comisionado de Instituciones Financie-ras (OCIF).
El 21 de octubre de 2003, los peticionarios presentaron ante el Tribunal de Primera Instancia un escrito titulado “Memorando sobre la tasa aplicable al pago de justa com-pensación en casos de expropiación forzosa”,(5) En dicho escrito, los peticionarios plantearon que la tasa de interés prescrita en la Ley de Expropiación era inconstitucional de su faz y en su aplicación, ya que no proveía una compen-sación justa que requiere el Art. II, Sec. 9, de la Constitu-ción de Puerto Rico.(6) Argumentaron, además, que la legis-lación estatal no tomaba en cuenta las fluctuaciones en el mercado local de los intereses entre el tiempo en que la propiedad fue expropiada y la fecha en que se dictaba la sentencia. Alegaron, además, que el método más idóneo para calcular la justa compensación era mediante la com-paración de las tasas de intereses aplicables a varios ins-trumentos de inversión, tomando en cuenta las fluctuacio-nes de las tasas a través del tiempo entre la fecha de la expropiación y la fecha del pago principal.
El 27 de octubre de 2003 el Tribunal de Primera Instan-cia dictó unas sentencias parciales, archivadas en autos el 30 de octubre de 2003, mediante las cuales estableció el valor de las propiedades.(7) En cuanto a una de las propie-dades (caso KEF 1994-0133), el foro de primera instancia decretó que el valor era $395,000. Por ello, le ordenó a la ACT depositar $52,800 debido a que ya había consignado $342,200 al iniciar el procedimiento de expropiación. En cuanto a la otra propiedad (caso KEF 1994-0131), el mismo foro declaró que el valor de la propiedad era *285 $4,252,679. Por tal razón, le ordenó a la ACT depositar $3,021,979 en vista de que al inicio del procedimiento de expropiación había consignado $1,230,700. Además de las sumas adicionales en los respectivos casos, la ACT debería satisfacer los intereses sobre las respectivas sumas a razón de la tasa vigente de uno por ciento anual —según estable-cida por la OCIF — (8) computados desde la presentación de la petición de expropiación hasta el pago total. Se ordenó al Secretario de Justicia y al Comisionado de Instituciones Financieras (Comisionado) que se expresaran sobre el planteamiento constitucional de los peticionarios.
En cuanto al caso KEF 1994-0131, el 9 de enero de 2004 la ACT —en cumplimiento con la sentencia parcial del 27 de octubre de 2003 del Tribunal de Primera Instancia— consignó $3,312,668.55.(9) Esta suma incluía los intereses a razón del uno por ciento computados desde el 26 de abril de 1994, fecha de la presentación de la demanda de expro-piación, hasta la consignación final.
El 2 de febrero de 2004 la ACT, en cumplimiento con la sentencia parcial del 27 de octubre de 2003 del Tribunal de Primera Instancia, consignó $57,385.64.(10) Esta suma in-cluía los intereses a razón del uno por ciento computados desde el 26 de abril de 1994, fecha de la presentación de la demanda de expropiación, hasta la consignación final.
El 3 de febrero de 2004, en cumplimiento con la senten-cia del 27 de octubre de 2003 del Tribunal de Primera Ins-tancia, la OCIF presentó un escrito titulado “Memorando de la Oficina del Comisionado de Instituciones Financieras en cumplimiento de Orden”.(11) Alegó, entre otras cosas, que la tasa de interés aplicable es la prescrita en el Regla- *286 mentó 78-1 de la Junta Financiera de la OCIF(12) (Regla-mento 78-1), al momento de dictarse la sentencia. Argüye-ron, además, que la Sec. 5A de la Ley de Expropiación, 32 L.RR.A. see. 2907, no es inconstitucional de su faz, ya que la tasa de interés pagadera a las partes con interés no surge de dicha ley ni de la Regla 44.3 de Procedimiento Civil.(13) Sostuvieron, además, que la Sec. 5A de la Ley de Expropiación, supra, provee de manera adecuada una com-pensación justa según dispuesta en el Art. II, Sec. 9 de la Constitución de Puerto Rico, supra. Tampoco procedía una tasa de interés equivalente a una inversión a diez años, como sostenían los peticionarios, ya que la partida en con-cepto de interés pagadero sobre la sentencia adviene paga-dera al momento de dictarse la sentencia, y por ello se tiene que considerar la tasa de interés vigente a esa fecha. Concluyó que la aplicación del Reglamento 78-1 a las par-tes con interés no era inconstitucional, ya que la tasa de interés dispuesta por este reglamento incorpora y refleja la realidad económica de Puerto Rico.
El 19 de febrero de 2004 los peticionarios presentaron en el Tribunal de Primera Instancia un escrito titulado “Réplica a memorando de la Oficina del Comisionado de Instituciones Financieras en cumplimiento de Orden”.(14) Alegaron, entre otras cosas, que la Ley de Expropiación era inconstitucional de su faz, ya que el método provisto por ésta para determinar la tasa de interés aplicable en casos de expropiación forzosa, “es el germen de su propia inconstitucionalidad”.(15) Argüyeron que el hecho de que la OCIF estableciera un solo tipo de interés, sin tomar en cuenta las diferentes tasas de interés utilizados en los dis-tintos instrumentos de inversión disponibles en el mer- *287 cado, usurpaba a los tribunales su función judicial de de-terminar la justa compensación. Además, colocaba al sujeto de la expropiación en una posición de desventaja donde corría el riesgo de que el interés variable establecido en ley no proveyera la compensación justa requerida por la Constitución de Puerto Rico. Indicaron que, para remediar tal situación, se debía tomar en cuenta las fluctuaciones de varios instrumentos con diferentes tasas de interés desde la fecha de expropiación hasta su pago total, escogiendo aquella que mejor provea una justa compensación. Sostu-vieron, además, lo siguiente:
Por otro lado, la Ley de Expropiación establece que la tasa aplicable es aquella “que esté en vigor al momento de dictarse la sentencia”. Al fijar un solo tipo de interés (el fijado a la fecha de la sentencia), el estatuto viola la Constitución si las variaciones en el tipo de interés durante el periodo en cuestión resultan en que el expropiado reciba menos de la justa com-pensación que exige nuestra Constitución. Según quedó clara-mente establecido en el Memorando sobre Tasa de Interés so-metido por la compareciente, esa legislación no toma en cuenta las fluctuaciones en el mercado local de los intereses entre el tiempo en que la propiedad fue expropiada y la fecha que se dicta la sentencia. Este defecto en la Ley puede causar, por un lado, que el gobierno pague una tasa de interés mayor a la que le corresponde si los intereses al momento de dictarse la sentencia son mayores a los intereses vigentes entre el mo-mento de la expropiación y el momento de la sentencia. El defecto en ley también puede causar que el gobierno pague una tasa de interés menor a la que le corresponde recibir al afectado, como parte de su justa compensación. (Enfasis suprimido.) Apéndice de la Petición de certiorari, págs. 307-308.
Señalaron que el vicio constitucional de la Ley de Ex-propiación provenía de su propio texto, por lo cual la ley resultaba inconstitucional de su faz.
El 19 de febrero de 2004 el Tribunal de Primera Instan-cia emitió una sentencia, notificada el 24 de febrero de 2004, en la que determinó que el interés de uno por ciento *288 dispuesto en la Ley de Expropiación era justo y equitativo para ambas partes.(16)
Inconformes, el 25 de marzo de 2004 los peticionarios presentaron unos recursos de apelación en el Tribunal de Apelaciones señalando que el foro de primera instancia in-cidió al declarar constitucional la tasa de interés prescrita en la Ley de Expropiación.(17) Alegaron, entre otras cosas, que el por ciento fijo por semestre establecido por el Regla-mento 78-1 de OCIF no tomaba en cuenta las fluctuaciones en las tasas de interés en los años entre la fecha de la expropiación y la fecha del pago. Esta situación provocaba que el Gobierno pagara una tasa de interés menor a la que le correspondía recibir a los peticionarios como una com-pensación justa, en violación a la cláusula de justa com-pensación de la Constitución de Puerto Rico. Señalaron, además, que la Ley de Expropiación establecía una tasa de interés basada en un solo instrumento de inversión, sin tomar en cuenta las tasas de interés dada por los distintos instrumentos de inversión disponibles en el mercado. El establecer un solo tipo de tasa de interés, sin tomar en cuenta las tasas de interés dadas por los distintos instru-mentos del mercado, usurpaba a los tribunales la función judicial de determinar la justa compensación. Indicaron, además, que los foros judiciales federales evaluaban cada caso por separado y adoptaban aquella tasa de interés que resultara más justa para el caso que tuvieran ante sí. Ar-güyeron, además, que la sentencia dictada por el Tribunal de Primera Instancia, en cuanto a la tasa de interés apli-cable al pago de una justa compensación, no reflejaba la realidad económica de Puerto Rico.
El 23 de julio de 2004, el Procurador General presentó su alegato ante el Tribunal de Apelaciones.(18) En esencia, argumentó que la tasa de interés dispuesta en la Ley de *289 Expropiación y en el Reglamento 78-1 de OCIF era justa y equitativa para las partes. Sin embargo, recomendó que se debía devolver el caso al foro de primera instancia para que se hicieran los cómputos correspondientes de acuerdo con las tasas de interés prevalecientes en el mercado, se-gún surgía del Reglamento 78-1 de OCIF y conforme éstas variaron desde la fecha de expropiación hasta la fecha del pago total de la compensación.
Ese mismo día, los peticionarios presentaron una ré-plica al alegato presentado por el Procurador General.(19) Aceptaron el planteamiento del Procurador General de que se computara el interés según variaba en el mercado desde la fecha de incautación hasta el pago total de la compensa-ción por la ACT. Sin embargo, rechazaron la posición del Procurador General de que la tasa de interés variable era aquella dispuesta por el Reglamento 78-1 de OCIF, ya que ésta se basaba en “ ‘la tasa equivalente al rédito de los “U.S. Treasury Bills” con vencimiento a seis (6) meses re-dondeado al % punto más cercano’ ”. Apéndice de la Peti-ción de certiorari, pág. 690. Argüyeron que para que las tasas fluctuantes prescritas por el Reglamento 78-1 de OCIF proveyeran una compensación justa, debían estar basadas en un índice que reflejara las condiciones econó-micas de Puerto Rico en una forma más adecuada.
El 13 de septiembre de 2004, la ACT presentó ante el Tribunal de Apelaciones un escrito titulado Oposición a Ré-plica a Moción Urgente Exponiendo la Posición de la Auto-ridad de Carreteras y Transportación.(20) Solicitó, entre otras cosas, que se declarara la validez constitucional de la Ley de Expropiación, que en casos de expropiaciones se utilizara el tipo de interés anual que estuviera vigente al momento de dictarse la sentencia por el Tribunal de Pri-mera Instancia y que dicho interés aplicara a todo el pe-riodo comprendido entre la fecha del “taking” hasta el pago *290 de la suma adicional, sin que se computara los intereses por la suma originalmente consignada.
El 29 de septiembre de 2004, los peticionarios presenta-ron en el Tribunal de Apelaciones una dúplica, donde sos-tuvieron que la tasa prescrita por ley debe ser sólo una de las alternativas a considerarse y no la única.(21)
El 29 de julio de 2005 el Tribunal de Apelaciones emitió la Sentencia, notificada el 5 de agosto de 2005, acogiendo los argumentos del Procurador General.(22) El foro interme-dio apelativo sostuvo la constitucionalidad de la Ley de Expropiaciones y confirmó la sentencia emitida por el Tribunal de Primera Instancia. Sin embargo, devolvió el caso al foro de primera instancia para que éste hiciera los cóm-putos correspondientes acorde con las tasas de interés pre-valecientes en el mercado —según surge del Reglamento 78-1 de OCIF— y conforme éstas habían variado semestral-mente desde la fecha de expropiación hasta la fecha del pago total de la justa compensación.
Insatisfechos, los peticionarios acuden ante nos me-diante un recurso de certiorari y alegan la comisión de los errores siguientes:
A. Erró el Tribunal de Apelaciones al confirmar la sentencia dictada por el TPI en la que sostuvo la validez constitucional de la tasa de interés prescrita por la sección 5(b) de la Ley de Expropiaciones. 32 L.P.R.A. [see.] 2908.
B. Erró el Tribunal de Apelaciones al determinar que las tasas variables aplicables son las dispuestas por el Regla-mento 78-1 de la OCIF para el pago de sentencias por el ELA. Petición de certiorari, pág. 9.
Con el beneficio de la comparecencia de las partes, esta-mos en posición de resolver los asuntos traídos ante nues-tra consideración. Veamos.
*291 II
A. El Art. II, Sec. 7, de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, ed. 1999, pág. 280, consagra el derecho fundamental del ser humano al disfrute de la propiedad.
Se reconoce como derecho fundamental del ser humano el de-recho a la vida, a la libertad y al disfrute de la propiedad. No existirá la pena de muerte. Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben obligaciones contractuales. Las leyes determinarán un mínimo de propie-dad y pertenencias no sujetas a embargo. (Énfasis suplido.)
El Art. II, Sec. 9, de la Constitución de Puerto Rico, supra, pág. 308, dispone, en lo pertinente, lo siguiente:
No se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley. (Énfasis suplido.)
La facultad de tomar o expropiar propiedad privada para fines públicos es uno de los poderes inherentes que posee el Estado. En caso de ejercitar ese poder inherente, el Estado tiene la obligación constitucional de pagar una compensación justa, o valor, por la propiedad privada expropiada y actuar conforme al procedimiento provisto por ley.(23) En ese sentido, la Asamblea Legislativa puede establecer limitaciones al derecho de propiedad en benefi cio del bienestar general.(24) Ello es así porque el disfrute de la propiedad privada, aunque de carácter fundamental, no es un derecho absoluto.(25)
*292 La obligación del Estado de pagar una justa compensación se puede manifestar de tres maneras: (1) mediante el ejercicio directo del poder de dominio eminente instando un recurso de expropiación; (2) por medio de su reglamentación, y (3) cuando ocurre una incautación de hecho al afectar de forma sustancial el uso de la propiedad físicamente.(26)
Similar protección al derecho de propiedad se encuentra en la Constitución de Estados Unidos. Establece la Quinta Enmienda de ese magno documento que nadie será privado de su vida, libertad o propiedad sin el debido proceso de ley ni se tomará la propiedad privada para uso público sin una compensación justa.(27)
La Ley de Expropiación regula los procedimientos de expropiación forzosa que realiza el Estado. El propósito esencial de un procedimiento de expropiación forzosa es la fijación de la compensación “justa y razonable” de la propiedad expropiada.(28) Como parte integral de la justa com pensación que se debe conceder, la Ley de Expropiación ordena el pago de intereses cuando existe una diferencia entre la suma fijada por la parte que solicita la expropiación y la cantidad que determine el tribunal como una compensación justa. Sobre este particular, la Sec. 5B de la Ley de Expropiación, 32 L.P.R.A. see. 2908, dispone, en lo pertinente, lo siguiente:
En cualquier sentencia dictada en un procedimiento de ex-propiación forzosa para la adquisición de propiedad privada o de cualquier derecho sobre la misma para uso público o apro-vechamiento en beneficio de la comunidad, entablado por el Estado Libre Asociado de Puerto Rico o Gobierno Estatal directamente, o a su nombre por cualquier agencia, autoridad, *293 instrumentalidad o funcionario del Estado Libre Asociado de Puerto Rico, en que la cantidad determinada por el tribunal como justa compensación por la propiedad o los derechos en la misma objeto de tal procedimiento, tanto en caso de trasmi-sión del título como de la mera posesión sin trasmisión del título, sea mayor que la cantidad fijada por el demandante y depositada en el tribunal como justa compensación por tal pro-piedad o derechos en la misma, el Estado Libre Asociado de Puerto Rico pagara el importe de la diferencia entre la suma así fijada por el demandante y depositada por el en el tribunal y la cantidad que a tal efecto haya determinado el tribunal como justa compensación por dicha propiedad o derechos en las mismas objeto de tal procedimiento, con intereses a razón del tipo de interés anual que fije por Reglamento la Junta Fi-nanciera de la Oficina del Comisionado de Instituciones Fi-nancieras y que este en vigor al momento de dictarse la senten-cia, de conformidad con la Regla 44.3, Ap. III de este título, sobre tal diferencia a contar desde la fecha de la adquisición de tal propiedad o derechos y desde esta fecha hasta la del pago de dicha diferencia; Disponiéndose, que en los casos en que el demandado o demandados apelen de la sentencia fijando la compensación y el Tribunal Supremo confirmase dicha senten-cia o rebajase la compensación concedida, el apelante no reco-brara intereses por el periodo de tiempo comprendido entre la fecha de radicación del escrito de apelación y hasta que la sentencia del Tribunal Supremo fuera final, firme y ejecutoria. (Énfasis suplido.)
El pago de intereses es una parte integral del mandato constitucional sobre la justa compensación.(29) La tasa tiene que ser “razonable”.(30) En Seaboard Air Line Ry. v. U.S., 261 U.S. 299, 306 (1922), el Tribunal Supremo de Estados Unidos dispuso lo siguiente:
The requirement that “just compensation” shall be paid is comprehensive and includes all elements and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation. Where the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value *294 paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added.
Expresamos en E.L.A. v. Rexco Industries, Inc., 137 D.P.R. 683, 689 (1994), citando a Seaboard Air Line Ry. v. U.S., supra, que la justa compensación es “aquella ‘que ponga al dueño en una posición pecuniaria tan buena a la que estaría si la propiedad no se hubiera expropiado’ (Enfasis suplido.)
Hemos sostenido, de la misma forma que el Tribunal Supremo de Estados Unidos, que la determinación de una justa compensación es esencialmente un ejercicio judicial y no legislativo.(31) En E.L.A. v. Rexco Industries, Inc., supra, págs. 688-689, citando a Monongahela Navigation Co. v. United States, 148 U.S. 312, 327 (1893), y a U.S. v. 50.50 Acres of Land, 931 F.2d 1349 (9no Cir. 1991), sostuvimos lo siguiente:
“[La Justa Compensación] es una controversia judicial y no legislativa. La legislatura puede determinar qué propiedad privada se necesita para propósitos públicos ésta es una con-troversia de carácter político y legislativo; pero cuando se ha ordenado la expropiación, entonces la controversia sobre la compensación es judicial. ... La constitución ha declarado que se tiene que pagar justa compensación y que su determinación es una cuestión que le compete a los tribunales.” (Corchetes en el original.)
B. La Ley de Expropiación establece que la tasa de interés que fije la Junta Financiera de OCIF es la que se utilizará para calcular los intereses en casos de expropiación forzosa.(32) En E.L.A. v. Rexco Industries, Inc., supra, invalidamos la imposición del seis por ciento como tasa de interés anual, según disponía la Ley de Expropiación vigente al momento de dictarse la sentencia. Como resultado *295 de esto, ordenamos que el Estado debía pagar los intereses que surgiesen del Reglamento 78-1 de OCIF, que fue apro-bado el 25 de octubre de 1988. El Reglamento 78-1 de OCIF, pág. 1, dispone lo siguiente:
SECCIÓN 3 — FIJACIÓN DE TASAS
a) Sentencias impuestas al Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades, corpora-ciones públicas o funcionarios en su car[á]cter oficial'. La tasa equivalente al r[é]dito de los “U.S. Treasury Bills” con venci-miento a seis (6) meses redondeado al 1/2 punto más cercano.
El Reglamento 78-1 de OFIC establece que el “U.S. Treasury Bills” es el instrumento de inversión a utilizarse para calcular la tasa de interés. La legislación federal difiere en este aspecto con la Ley de Expropiación. El interés fijado por la legislación federal se calcula a base de “at an annual rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the beginning of each additional year”.(33)
Diversos tribunales federales, a nivel de circuitos apelativos, han evaluado controversias relacionadas con la tasa de interés aplicable en casos de expropiación forzosa. En United States v. Blankinship, 543 F.2d 1272, 1276 (9no Cir. 1976), el tribunal evaluó si la tasa de interés de seis por ciento prescrita en el Declaration of Taking Act,(34) aplicaba a las expropiaciones realizadas en ese caso, independientemente de las tasas de interés prevalecientes en el mercado. El tribunal determinó que la tasa de interés de seis por ciento dispuesta en la ley federal sólo garantizaba la tasa de interés mínima que un tribunal podía imponer en casos de expropiación forzosa. En Washing *296 ton Metro. Area T.A. v. One Parcel of Land, 706 F.2d 1312, 1322 (4to Cir. 1983), el tribunal sostuvo lo siguiente:
The choice of an appropriate rate of interest is a question of fact, to be determined by the district court ... and the district court’s judgment will be upset only if it reaches a clearly erroneous result. In fixing an award of interest, the district court should attempt to determine what “a reasonable prudent person investing funds so as to produce a reasonable return while maintaining safety of principal” would have achieved. (Énfasis suplido.)
En relación con la determinación de la tasa de interés apropiada, en Antoine v. United States, 710 F.2d 477, 480 (8vo Cir. 1983), el tribunal sostuvo lo siguiente:
In determining the proper rate of interest it is necessary to examine the economic circumstances between the date of the taking and the date of payment instead of relying on the circumstances prevailing at the time of taking. (Énfasis suplido.)
En U.S. v. 50.50 Acres of Land, 931 F.2d 1349, 1355 (9no Cir. 1991), haciendo referencia a United States v. Blankinship, supra, el tribunal sostuvo lo siguiente:
The Blankinship court directed district courts to use a fact-specific approach to determine if the statutory rate was “proper and reasonable,” or if the Fifth Amendment required a higher rate of interest.
Under Blankinship, the court must first determine if the statutory formula is constitutionally inadequate given the factual circumstances of the case. ... The court should receive evidence from each side and consider a variety of investment measures. If the court finds the statutory formula to be inadequate, it must determine the appropriate rate to be used.
En United States v. 429.59 Acres of Land, 612 F.2d 459, 464—465 (9no Cir. 1982), el tribunal sostuvo lo siguiente:
The payment of interest on deficiency awards in condemnation cases is designed to satisfy the constitutional standard of just compensation by putting the owner “in as good position pecuniarily as he would have occupied if his property had not been taken.” ... It is assumed that a person who received the *297 pecuniary value of his property as of the date of taking would invest these funds in a reasonably prudent manner. Thus, it is proper, when payment of just compensation is delayed, to fix interest on any deficiency award at the rate “a reasonably prudent person investing funds so as to produce a reasonable return while maintaining safety of principal” would receive. The Commission properly carried out the District Court’s instruction.
Because a reasonably prudent investor would diversify his risk, it is proper to consider the rate of interest paid on different types of securities with different maturities. The Commission did precisely this. The Commission considered interest rates paid on a wide range of government and private obligations with both short-term and long-term maturities. In determining the appropriate interest rate, the Commission selected a composite of four of these securities —six-month Treasury bills, four to six-month prime commercial paper, ninety-day prime bankers acceptances, and six month bank certificates of deposit. The Commission then averaged the interest rates paid on these composite securities throughout the period from the date of taking to the time of the Commission’s report.
United States v. Blankinship, supra, does not require the application of any fixed formula for interest rate determinations in condemnation cases. In Blankinship, an interest rate determination was remanded for reconsideration because the trial court did not consider interest rates paid on government obligations with maturities greater than 180 days. The Commission considered such evidence in our case. The fact that it chose not to include such interest rates in its ultimate calculation of a reasonable rate of interest is not reversible error. Nor did the Commission err by compounding the 6.635 average rate of interest to arrive at a figure of 7.4 percent simple interest per annum. Compounding of interest is appropriate to compensate the landowners for the loss of use of the interest that the deficiency award would have been producing for them during the interim. (Enfasis suplido.)
Como resultado, en parte, de la jurisprudencia antes ci-tada, el Congreso derogó la tasa mandatoria de interés del seis por ciento dispuesta en el Declaration of Taking Act, Ley Pública Núm. 99656. De igual forma, como resultado de los casos E.L.A. v. Rexco Industries, Inc., supra, y Hampton Development Corp. v. E.L.A., 139 D.P.R. 877 (1996), nuestra Legislatura enmendó la Ley de Expropia- *298 ción para eliminar la tasa de seis por ciento de interés en casos de expropiación. Posteriormente, la Legislatura de Puerto Rico enmendó la Ley de Expropiación para que el Estado pagara los intereses que surgiesen del Reglamento 78-1 de OCIF.
C. Está firmemente establecido en nuestro ordenamiento jurídico que un estatuto es y se presume constitucional hasta que se resuelva lo contrario.(35) Una ley puede ser declarada inconstitucional de su faz o en su aplicación.(36) Sin embargo, antes de declarar inconstitucional una ley, el tribunal examinará primero si existe alguna interpretación razonable del estatuto.(37) En Nogueras v. Hernández Colón, 127 D.P.R. 405, 412 (1990), señalamos lo siguiente:
Por último, reafirmamos el postulado fundamental de her-menéutica constitucional que establece que al examinar un estatuto, “el Poder Judicial —en abono de una deferencia ha-cia el Poder Legislativo— debe esforzarse por lograr interpre-taciones congruentes y compatibles con el mantenimiento de la constitucionalidad de una ley”.
hH h — I hH
Por estar íntimamente relacionados ambos señalamien-tos de error, los discutiremos en conjunto.
Con el trasfondo normativo antes expuesto, pasamos a resolver si erró el Tribunal de Apelaciones al modificar y de esa forma confirmar la sentencia emitida por el Tribunal de Primera Instancia. En su sentencia, el foro intermedio apelativo dispuso que el utilizar sólo la tasa de interés vi-gente al momento de dictar la sentencia, no proveía una *299 compensación justa según la Constitución, ya que esta tasa no reflejaba los cambios acaecidos en el mercado entre la fecha de expropiación y la fecha del pago total por los te-rrenos expropiados. Sostuvo, además, lo siguiente:
Así las cosas, en ánimo de cumplir con la justicia, entende-mos que el Tribunal de Primera Instancia debe resolver lo concerniente a los cómputos correspondientes al pago de inte-reses en los casos ante nos, tomando en consideración que la imposición de tales intereses debe computarse dividiendo el pe-ríodo de tiempo en diferentes semestres y aplicando a cada semestre la tasa de interés aplicable al Estado en ese semestre, según expuso la parte apelada en su alegato.
... No obstante, se devuelve el caso al Tribunal de Primera Instancia para que éste haga los cómputos correspondientes acorde con las tasas de interés prevalecientes en el mercado —según surgen del Reglamento 78-1 de la OCIF— y conforme éstas han variado semestralmente desde la fecha de la expro-piación hasta la fecha del pago total de la justa compensación en ambos casos. (Enfasis suplido.) Apéndice de la Petición de certiorari, págs. 772-773.
Ambas partes están de acuerdo con esta parte de la sen-tencia del foro intermedio apelativo. No obstante, la parte peticionaria sostiene que no es correcto que las tasas de interés variables que aplican sean aquellas dispuestas por el Reglamento 78-1 de OCIF para el pago de sentencias que constituyen obligaciones del Estado.
En primer lugar, coincidimos con el Tribunal de Apela-ciones en que se debe rechazar una lectura literal de la Sec. 5B de la Ley de Expropiación, supra, según la cual aplicaría la tasa de interés prevaleciente al momento de dictarse la sentencia, y que en el presente caso correspon-dería al uno por ciento. En este caso, la incautación de la propiedad ocurrió en el 1994, sin embargo, no fue hasta el 2003 que se dictó la sentencia final. Durante ese período de tiempo, la fijación de intereses por parte de OCIF varió semestralmente.
Concluimos que en los casos donde el período en- *300 tre la incautación y el pago total del Estado exceda un semestre, el Tribunal de Primera Instancia debe conside-rar las variaciones en las tasas de interés durante los dis-tintos semestres. De esta forma se asegura que las tasas de interés que se apliquen en un momento dado reflejen las condiciones existentes en ese momento en el mercado para los instrumentos financieros. Al ser el seleccionado por OCIF un instrumento financiero con un término de seis me-ses, corresponde que las tasas aplicables se revisen semes-tralmente, tal como se estipula en el Reglamento 78-1 de OFIC.
En E.L.A. v. Rexco Industries, Inc., supra, dispusimos que las fluctuaciones en el mercado tienen que ser consideradas al computar el interés aplicable en casos de expropiación forzosa. Sin embargo, se le estaba dando una lectura literal a la Ley de Expropiación cuando disponía que se utilizara el interés fijado por OCIF que estuviera en vigor al momento de dictarse la sentencia. La intención de este Tribunal en E.L.A. v. Rexco Industries, Inc., supra, fue que las tasas de intereses aplicables a casos de expropiación forzosa reflejaran las fluctuaciones imperantes en el mercado de valores. Para lograr dicho objetivo, se tienen que considerar las variaciones en las tasas de interés durante los distintos semestres. De esta forma se cumple con el mandato constitucional de satisfacer una justa compensación en los casos de expropiación forzosa, consagrado en el Art. II, Sec. 9 de nuestra Constitución, supra. Así pues, entendemos que la determinación del Tribunal de Apelaciones a estos efectos debe ser confirmada, ya que cumple con el propósito establecido por este Tribunal en E.L.A. v. Rexco Industries, Inc., supra.
De otro lado, los peticionarios entienden que las tasas de interés prescritas en el Reglamento 78-1 de OCIF son inconstitucionales, ya que no están basadas en un índice que refleje las condiciones económicas de Puerto Rico en una forma adecuada. El Tribunal de Apelaciones sostuvo la *301 constitucionalidad de las tasas de interés establecidas se-mestralmente por OCIF. Compartimos tal óptica. Veamos.
El instrumento financiero utilizado en el presente por la OCIF para fijar la tasa de interés en los casos de “senten-cias impuestas al Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades, corporacio-nes publicas o funcionarios en su car[á]cter oficial” (Regla-mento 78-1, pág. 1), es los “U.S. Treasury Bills”, que es el mismo utilizado en la jurisdicción federal para los mismos propósitos.(38) Este instrumento financiero, sea cual fuese su término de madurez, es el que el mercado considera como de menor riesgo crediticio entre todos los instrumen-tos financieros disponibles. Es, por ende, el instrumento financiero con el cual una persona razonable, actuando prudentemente, invertiría sus fondos para producir un ré-dito razonable sin arriesgar el valor del principal.
Debemos aclarar que el riesgo al valor del principal tiene dos componentes: el riego crediticio y el riesgo de la inflación que reduce el valor real del principal. El riesgo crediticio es aquel cuando el deudor no puede pagar el principal (con intereses acumulados) al acreedor. Este riesgo es casi inexistente en el caso de los “U.S. Treasury Bills”, como señaláramos anteriormente. El riesgo al valor real del principal de cualquier instrumento financiero, que representa la inflación, está considerado en la tasa de interés establecida por el mercado. En otras palabras, las tasas de interés de todo instrumento financiero incorporan las expectativas inflacionarias en un momento dado. En el caso de un instrumento financiero con un término de madurez de, por ejemplo, seis meses, la tasa de mercado prevaleciente incorpora las expectativas inflacionarias para los próximos seis meses. Similarmente, la tasa de mercado *302 prevaleciente para un instrumento con un término de ma-durez de, digamos, cinco años, incorpora las expectativas inflacionarias para los próximos cinco años.
En el caso donde la tasa de interés aplicable, como el caso de autos, es la de un instrumento financiero con un término de madurez de seis meses —para proteger el valor del principal del riesgo inflacionario durante un periodo en exceso de seis meses— es necesario que la referida tasa se revise semestralmente. De esta manera se cumple con el requisito constitucional de la justa compensación del in-mueble expropiado. Por ello coincidimos con el foro inter-medio apelativo sobre este asunto.
La constitucionalidad del uso de las tasas de interés establecidas en el Reglamento 78-1 ya fue resuelto en E.L.A. v. Rexco Industries, Inc., supra. El exigir una compensación justa no equivale a exigir la compensación equivalente al método de inversión alternativo que más alto rendimiento produciría para la compensación derivada de una expropiación; meramente equivale a la compensación que recibiría una persona prudente que invierta una cantidad que produzca un rédito razonable que, a la vez, mantenga la seguridad del principal invertido.
Siendo ello así, entendemos que el Tribunal de Apelacio-nes resolvió correctamente al determinar que las tasas de interés a utilizarse serían las establecidas semestralmente por OCIF en el presente, o sea, las tasas de los “U.S. Treasury Bills” con un término de madurez de seis meses.
A la luz de los pronunciamientos previamente esbozados, resolvemos que en los casos de expropiaciones, donde el pe-ríodo entre la incautación y el pago total del Estado exceda un semestre, el Tribunal de Primera Instancia tiene que con-siderar las variaciones en las tasas de interés durante los distintos semestres, según surgen del Reglamento 78-1 de OCIF. La imposición de los intereses debe computarse divi-diendo el período de tiempo en diferentes semestres y *303 aplicando a cada semestre la tasa de interés efectiva en ese semestre.
Es norma reiterada que, antes de decretar la inconstitucionalidad de una ley, el tribunal examinará primero si existe alguna interpretación razonable del estatuto que le permita soslayar la cuestión constitucional.(39) Entendemos que el foro intermedio apelativo brindó una interpretación razonable al estatuto aquí en controversia, por lo que no procede el planteamiento de inconstitucionalidad presentado por la parte peticionaria.
En mérito de lo anterior, concluimos que el Tribunal de Apelaciones actuó correctamente al confirmar la sentencia dictada por el Tribunal de Primera Instancia en cuanto ésta sostuvo la validez constitucional de la Sec. 5B de la Ley de Expropiación, supra. También concluimos que el Tribunal de Apelaciones actuó correctamente al devolver el caso al Tribunal de Primera Instancia para que éste hi-ciera los cómputos correspondientes en conformidad con las tasas de interés prevalecientes en el mercado, según surgen del Reglamento 78-1 de OCIF y conforme éstas han variado semestralmente desde la fecha de la expropiación hasta la fecha del pago total de la justa compensación en ambos casos.
IV
Por los fundamentos antes expuestos, confirmamos la sentencia recurrida.
Las Juezas Asociadas Señora Fiol Matta y Señora Rodríguez Rodríguez no intervinieron.

 Apéndice de la Petición de certiorari, págs. 42-48 y 357-364.

 Íd., págs. 190-191, 487-488 y 489-490.

 Esto debido a que las partes con interés entendieron que éste era un asunto de índole constitucional no susceptible de ser transigido. Véase Apéndice de la Peti-ción de certiorari, págs. 188-189.

 32 L.P.R.A. seo. 2901 et seq.

 Apéndice de la Petición de certiorari, págs. 192-275 y 491-574.

 Const. E.L.A., L.P.R.A., Tomo 1.

 Apéndice de la Petición de certiorari, págs. 276-279 y 577-580.

 Véase la lista sobre tasas de interés sobre las sumas dispuestas mediante sentencia por un tribunal, preparada por la Oficina del Comisionado de Instituciones Financieras, Apéndice Apéndice de la Petición de certiorari, pág. 209.

 Apéndice de la Petición de certiorari, pág. 591.

 Íd., pág. 292.

 Íd., págs. 293-304 y 594-605.

 Reglamento 78-1 de la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras, Reglamento Núm. 3702, Departamento de Estado, 25 de octubre de 1988 (Reglamento 78-1).

2) 32 L.P.R.A. Ap. III.

 Apéndice de la Petición de certiorari, págs. 305-314 y 607-616.

 Íd.

 Íd., págs. 315-318 y 617-620.

 Íd., págs. 4-318 y 319-620.

 Íd., págs. 653-702.

 Íd., págs. 715-720.

 Íd., págs. 721-730.

 Íd., págs. 731-733.

 Íd., págs. 740-774.

 E.L.A. v. Soc. Civil Agrícola e Industrial, 104 D.P.R. 392, 398 (1975).

 Velázquez Velázquez v. E.L.A., 135 D.P.R. 84, 88 (1994).

 Íd.; Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943 (1991); Vélez v. Srio. de Justicia, 115 D.P.R. 533 (1984); E.L.A. v. Márquez, 93 D.P.R. 393 (1966).

 Velázquez Velázquez v. E.L.A., supra; Culebra Enterprises Corp. v. E.L.A., supra; Sucn. García v. Aut. de Carreteras, 114 D.P.R. 676 (1983); Olivero v. Autoridad de Carreteras, 107 D.P.R. 301 (1978).

 Hampton Development Corp. v. E.L.A., 139 D.P.R. 877, 888 (1996); Heftler Internacional, Inc. v. J. de P., 99 D.P.R. 467, 473-474 (1970).

 E.L.A. v. Tribunal Superior, 86 D.P.R. 692 (1962).

 E.L.A. v. Rexco Industries, Inc., 137 D.P.R. 683, 689 (1994).

 Íd., pág. 687.

 Íd.; Monongahela Navigation Co. v. United States, 148 U.S. 312 (1893); U.S. v. 50.50 Acres of Land, 931 F.2d 1349 (9no Cir. 1991).

 32 L.P.R.A. see. 2908.

 40 U.S.C.A. sec. 3116(a)(2).

 40 U.S.C.A. see. 3114.

 Nogueras v. Hernández Colón, 127 D.P.R. 405, 412 (1990); Cerame-Vivas v. Srio. de Salud, 99 D.P.R. 45, 51 (1970); Esso Standard Oil v. A.P.P.R., 95 D.P.R. 772, 783 (1968).

 Asoc. Ctrl. Ace. C. Maracaibo v. Cardona, 144 D.P.R. 1, 22 (1997).

 Pueblo v. Santiago Feliciano, 139 D.P.R. 361, 407 (1995); Ashwander v. Valley Authority, 297 U.S. 288, 346 (1936).

 En la jurisdicción federal se utiliza la tasa de los “U.S. Treasury Bills” con una madurez de un (1) año, mientras que en nuestra jurisdicción la Oficina del Comisionado de Instituciones Financieras utiliza la tasa de los ‘U.S. Treasury Bills” con una madurez de seis meses.

 E.L.A. v. Aguayo, 80 D.P.R. 552, 596 (1958); Ashwander v. Valley Authority, supra.